STATE of Iowa, Appellee,

v.

**Joanne J. TAGGART, Appellant.**

No. 93–159.

Court of Appeals of Iowa.

Oct. 25, 1994.

Artis Reis of Smith, Reis & Phillips, West Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., John P. Sarcone, County Atty., and Melodee Hanes and Steve Foritano, Asst. County Attys., for appellee.

Heard by DONIELSON, C.J., HUITINK, J., and SCHLEGEL, Senior Judge.*

HUITINK, Judge.

Joanne Taggart appeals her convictions on three counts of child endangerment. We affirm.

Taggart, her daughter, her four-year-old son J.W., and her boyfriend Dario Ruesga, moved into Michelle and David Crouse's home on February 16, 1992. Taggart

worked during the day until February 27 or 28, and she left Ruesga to supervise her children while she worked.

On February 17 Michelle Crouse noticed bruises on J.W.'s thigh and chest. On February 26 J.W. complained his arm hurt and was observed favoring it. When the Crouses questioned Taggart about the arm she told them it was only a pulled muscle caused by Ruesga jerking on J.W.'s arm.

In the next few days the Crouses observed a scratch and bruise on J.W.'s forehead, a bruise on his chin, and a severe burn on his right hand. Taggart provided the following explanations: Ruesga had attempted to hit J.W. in the head and had caused the scratch and resulting bruise instead; Ruesga was speaking to J.W. and grabbed his face but the child tried to pull away and caused the bruise; and J.W. had held his hand over Ruesga's lighter and burned himself.

On March 5 Ruesga took J.W. to the basement to change clothes. Ruesga called to Taggart after fifteen minutes, and she found J.W. unconscious on the floor. Ruesga told Taggart he had spanked J.W. and J.W. had fallen and hit his head. Paramedics were called to the house and took J.W. to the hospital. In examining J.W., medical personnel observed his chest and buttocks were extensively bruised; he had a broken arm; he was suffering from massive brain injury; his genitalia were bruised; the burned hand was infected; and his liver and mesocolon were lacerated. When questioned about the injuries, Taggart offered inconsistent explanations for J.W.'s injuries or denied having any previous knowledge of them.

Taggart was charged with four counts of child endangerment. Count I alleged she knowingly permitted the continuing physical abuse of her son, and the remaining counts alleged she had failed to provide needed medical care for J.W.'s fractured arm (count II), fractured liver (count III), and burned hand (count (IV).

At trial the court admitted several items into evidence over Taggart's objections. These items included a letter written by Ruesga to Taggart in which he complained

* Senior judge from the Iowa Court of Appeals serving by order of the Iowa Supreme Court.

about Taggart interfering with his attempts to discipline J.W. Taggart testified she had no knowledge of J.W.'s massive bruises and believed the injuries of which she was aware were due to accidents. The district court did not allow Taggart to testify about her current feelings regarding Ruesga or to offer her journal which tracked J.W.'s medical progress after he was hospitalized.

The trial court overruled Taggart's motions for directed verdict and judgment of acquittal. Taggart was convicted on counts I, II, and IV and sentenced to three consecutive ten-year sentences.

Taggart contends there was insufficient evidence to support the jury's findings (1) she "knowingly permitted" the continuing abuse of J.W. as charged in count I or (2) she willfully deprived J.W. of necessary health care which resulted in serious injury (fractured left arm) as charged in count II and serious injury (severe burn on right hand) as charged in count IV. We disagree.

■ Our scope of review is for errors at law. Iowa R.App.P. 4. A verdict will be upheld where there is substantial evidence in the record tending to support the charge. *State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984). Substantial evidence means evidence which would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.*

■ The evidence is viewed in the light most favorable to the State, including legitimate inferences and presumptions that fairly and reasonably may be deduced from the evidence in the record. *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984). Direct and circumstantial evidence are equally probative so long as the evidence raises "a fair inference of guilt and [does] more than create speculation, suspicion, or conjecture." *State v. Hamilton*, 309 N.W.2d 471, 479 (Iowa 1981). We consider all the evidence at trial, not just the evidence supporting the verdict. *Bass*, 349 N.W.2d at 500.

■ As to count I, the State presented substantial evidence showing Taggart knowingly permitted the continuing physical abuse of J.W. by Ruesga, as required by Iowa Code section 726.6(1)(e) (1991).

The emergency room pediatrician who treated J.W. upon his arrival at the hospital on March 5 was Dr. McAuliff. At trial Dr. McAuliff testified there were distinct bruising patterns on J.W.'s body. He testified half of the bruises on J.W.'s body were over forty-eight hours old, other bruises were over four days old, and yet others showed signs of being well healed. Dr. McAuliff stated the pattern of bruises was not of the type expected on a typical four-year-old. Rather the bruises indicated a pattern of ongoing, inflicted abuse.

There was evidence Taggart had observed these bruises on J.W. on several occasions during the period between February 16 and March 4. Michelle and David Crouse both testified Taggart bathed J.W. during this period. Michelle Crouse also recalled Taggart telling J.W. to sit still while he was in the bathtub. Taggart also admitted at trial she bathed J.W., but she denied seeing any injuries.

Michelle Crouse also testified she either asked about or discussed J.W.'s bruises with Taggart at least two different times. Taggart told her one bruise was due to a playground accident while the other was caused by J.W.'s attempt to pull away from Ruesga.

In addition, Crouse testified Taggart claimed J.W. burned himself when he held his hand over Ruesga's lighter. Dr. McAuliff testified as to the serious nature of the burn on J.W.'s hand, stating the eschar (the jelly-like substance which formed over the burn) was a sign the burn was extensive and deep and indicated it was most likely a third-degree burn. When he questioned Taggart at the hospital about J.W.'s injuries, she explained J.W. burned his hand by touching a stove several days earlier. Her contradictory explanations to Michelle Crouse and Dr. McAuliff are evidence she knew J.W. was being abused and attempted to conceal the abuse.

Additional evidence presented at trial indicated Taggart was aware J.W. was being abused. First, Taggart admitted receiving a letter from Ruesga a few days before March 5. From the contents of the letter a reasonable juror could find Taggart knew of Rues-

ga's abuse of J.W. Second, Michelle Crouse testified after Taggart and Ruesga moved into her home J.W. began to wet his pants frequently. This behavior soon progressed into J.W. having bowel movements in his pants, even though he was toilet trained prior to February 16.

Considering the above evidence along with the close relationship between Taggart and Ruesga, any reasonable juror could conclude Taggart had knowledge of the continuing physical abuse of J.W. We affirm on this issue.

■ As to counts II and IV, there is also substantial evidence in the record from which a jury could conclude Taggart willfully deprived J.W. necessary health care for his fractured arm and the burn on his hand thus causing substantial harm to his physical, emotional, or mental health as required by section 726.6(1)(d).

■ We reject Taggart's claim that the fractured arm was not a serious injury for purposes of section 726.6(2). Dr. Ellerbroeck testified the fracture would have caused a four-year-old child such as J.W. extreme pain, he would have prevented the arm from moving, and such fractures take weeks or months to heal. Michelle Crouse testified J.W. began to favor and cradle the arm shortly after Taggart and Ruesga moved in. From February 26 on he carried it flat against his side and did not use it. It is clear the fracture was a serious injury which caused protracted impairment of J.W.'s use of the arm. *See State v. Welton,* 300 N.W.2d 157, 160–61 (Iowa 1981).

Evidence showed Taggart was aware of the arm injury as well as the burn but chose not to seek medical treatment. Testimony revealed she was questioned about seeking medical care for each of the injuries. Testimony further revealed she dismissed the arm injury as a minor muscle pull which was healing on its own. Taggart also treated the burn as minor despite the fact it covered almost the entire palm, caused J.W. discomfort, and made normal activity difficult for him since his left arm was impaired as well. Finally, the evidence indicates Taggart's fail-ure to seek medical treatment resulted in the burn's infection.

We determine there was substantial evidence from which a reasonable juror could find Taggart was guilty of child endangerment as charged in counts II and IV, which resulted in serious injury to J.W.'s arm and hand. We affirm on these issues.

Taggart also contends the district court erred in several evidentiary rulings, including admitting into evidence the unduly prejudicial letter while refusing to allow her to testify about her current feelings toward Ruesga and not admitting a journal she kept concerning J.W.'s medical progress after his hospitalization. We disagree.

■ Determinations of relevance of evidence rests within the sound discretion of the trial court and will be reversed only upon a showing that such discretion has been abused. *State v. Gordon,* 354 N.W.2d 783, 784 (Iowa 1984). Relevant evidence may be admitted into the record only if its probative value outweighs the prejudicial effect of its admission. *State v. Ellis,* 350 N.W.2d 178, 180–81 (Iowa 1984).

■ The probative value of the letter was extremely high as it went to prove Taggart had knowledge of Ruesga's disciplining of J.W. The court limited the purpose of the letter and did not abuse its discretion in allowing the letter into evidence.

■ Taggart's current feelings for Ruesga and her journal which contained her personal account of J.W.'s medical progress were irrelevant to the issues at trial. Her feelings and journal keeping developed during a period *after* the occurrence of the alleged criminal acts, and they have no relevance as to Taggart's state of mind during the period the acts were committed. The trial court did not abuse its discretion, and we affirm on these issues.

Lastly, Taggart challenges the three consecutive ten-year sentences imposed. She argues the trial court failed to consider the factors contained in Iowa Code section 901.5 (1991) before imposing sentence.

■ Section 901.5 imposes an affirmative duty on the court to exercise its discretion in

**882**

determining which sentencing option "will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." In addition, a sentencing court must state on the record its reasons for selecting a particular sentence. Iowa R.Crim.P. 22(3)(d). The court's statement must be sufficiently specific to permit the appellate court to discern the reasons for the sentence so the appellate court can determine whether the trial court abused its discretion in selecting the sentence imposed. *State v. DeWitt,* 426 N.W.2d 678, 679 (Iowa App.1988) (citation omitted).

The sentencing transcript contains the following statement by the court: "Granting of probation in this matter is denied because it is unwarranted to protect the public from further criminal activity by the defendant and would unduly lessen the seriousness of the offense." However, this is a comment on probation, not the sentences themselves. The record contains nothing further as to the court's reasons for imposing the sentences.

From reviewing the foregoing statement, we determine the trial court did not exercise its discretion as required by section 901.5.

The failure to do so requires the case be remanded for resentencing. *See State v. Washington,* 356 N.W.2d 192, 197 (Iowa 1984) (citation omitted); *see also State v. McKeever,* 276 N.W.2d 385, 388 (Iowa 1979).

Even if we assume this statement is the court's reason for imposing consecutive sentences, it is insufficient, and its brevity prevents review of the exercise of the trial court's discretion. *State v. Johnson,* 445 N.W.2d 337, 343 (Iowa 1989). A remand for resentencing is required.

We determine any other claims Taggart may have raised are either covered by this opinion or are without merit. The conviction is affirmed. The sentence is vacated, and the case is remanded for resentencing.

**AFFIRMED IN PART; SENTENCES VACATED; AND REMANDED FOR RESENTENCING.**