**STATE of Iowa, Appellee,**

v.

**Stephen T. UTHE, Appellant.**

**No. 94–886.**

Supreme Court of Iowa.

Jan. 17, 1996.

Rehearing Denied March 22, 1996.

Linda Del Gallo, State Appellate Defender, and John F. Fatino, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and James P. Ward, Assistant County Attorney, for appellee.

Considered by LARSON, P.J., and CARTER, NEUMAN, ANDREASEN and TERNUS, JJ.

NEUMAN, Justice.

Defendant Stephen Uthe was convicted, following jury trial, of three counts of forgery in violation of Iowa Code section 715A.2 (1993). An habitual offender, he was sentenced to three consecutive prison terms of fifteen years each. *See* Iowa Code §§ 902.3, 902.8, 902.9(2). Uthe's principal claim on appeal concerns the authentication of the exemplar used to compare his signature with the alleged forgeries. He also challenges the admissibility of "other crimes" evidence, the court's failure to define "uttering" for the jury, the sufficiency of the evidence to sustain the convictions, and his sentence. We affirm the convictions but vacate the sentences and remand for resentencing.

I. The jury heard the following facts: Clinton Ross maintained a checking account at the Iowa Trust and Savings Bank in Oskaloosa, Iowa, between 1980 and 1983. The account was closed in 1983 when he and his wife left the state. Ross did not know Stephen Uthe, and Uthe had no authority to write checks on his account.

Twice on November 18, 1993, and once on November 22, 1993, cashiers at K's Merchandise in Des Moines accepted checks written on the closed Ross account in exchange for merchandise. None of the cashiers could positively identify Uthe as the person who had tendered the checks. A sales manager who approved two of the checks identified Uthe and one other person from a photo array as possible suspects. At trial, the manager could not positively identify Uthe as the person who passed the check but thought a person sitting at counsel table looked "familiar."

Troy Tullis, an auto parts store employee in Boone, testified he received a check from Uthe, drawn on the Ross account, in exchange for paint products. The purchase occurred on November 24, 1993. Later that same day, Boone County deputy sheriff James Lukawski stopped Uthe's vehicle following a high speed chase. A search of the vehicle yielded the Ross checkbook.

Urbandale police officer Howard Freeman investigated the alleged forgeries. He has received special training in the examination of questioned documents. For comparison purposes, he used as a "known" sample of Uthe's writing a check Uthe allegedly drew on the account of Dennis and Sally Moffitt in connection with a purchase at Kohl's Department Store in July 1993. Officer Freeman admitted he did not see Uthe sign the Moffitt check. He received the check from an officer Dippold, who received it from Kohl's employees accompanied by a videotape showing Stephen Uthe writing *something* at the time of the transaction. The check was not identifiable on the videotape. Freeman was later told by Moffitt that his checkbook had been stolen in a burglary at his residence in 1981. Based on his comparison of the signatures on the Ross account checks with the signature on the Moffitt check, officer Freeman offered his opinion that they were both written by the same person.[1]

II. The testimony of officer Freeman was admitted over defense counsel's objection that (1) the exemplar he used was not properly authenticated and (2) its introduction permitted the jury to hear unfairly prejudicial evidence of prior crimes. The court overruled the objection. It believed the "Moffitt" exemplar could be properly authenticated using the videotape without resorting to inadmissible hearsay about how the tape was procured. It also held that the Moffitt check, standing alone, did not constitute evidence of another crime. Uthe challenges both bases for the ruling on appeal.

■ A. *Authentication.* Iowa Code section 622.25 provides:

> Evidence respecting handwriting may be given by experts, by comparison, or by comparison by the jury, with writings of the same person which are *proved to be genuine.*

(Emphasis added.) As a condition precedent to admissibility, the requirement of authentication is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Iowa R.Evid. 901(a).

In *State v. Streit,* this court discussed two "obvious" methods of proving the authenticity of the standard: (1) by the testimony of a witness to the signature or (2) by the writer's own admission. 248 Iowa 260, 263, 80 N.W.2d 318, 320 (1957). The court then went on to hold that a bank signature card could serve as the standard for comparison where all bank customers—including the defendant—were required to sign such a card upon opening an account. *Id.,* 80 N.W.2d at 320. The fact that the witness making the comparison had not witnessed the original card had no bearing on the authentication of the standard.

■ Here the standard offered by officer Freeman for comparison with the signature on the Ross account checks was a check allegedly drawn by Uthe on an account owned by Dennis Moffitt. The officer did not see Uthe sign the Moffitt check, but before making the comparison he viewed a videotape showing Uthe involved in the alleged transaction where the check was tendered. Uthe's involvement in the transaction

---

1. The evidence reveals that the name signed on the Ross account checks was "Clinton Ross" and the signature on the Moffitt check read "Dennis Moffitt."

was verified by officer Freeman in conversation with the store's security officer, manager, and sales clerk. We believe this is proof sufficient to satisfy the preliminary authentication requirements for comparison of signatures by experts under rule of evidence 901(b).

B. *"Other crimes" evidence.* The fact that the Moffitt check implicated Uthe in another crime presents a separate question. The court, observing that individuals are sometimes authorized to sign checks for others, found that the introduction of the check—without elaboration on the surrounding circumstances—would not, standing alone, constitute evidence of a crime. We are not so convinced. Common sense would suggest that jurors would regard the check as proof of yet another forgery by the defendant.

■ Nevertheless, Iowa Rule of Evidence 404(b) prohibits evidence of other crimes or bad acts

> to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, the key to admissibility is "whether the challenged evidence is relevant and material to some legitimate issue other than a general propensity to commit a wrongful act." *State v. Barrett,* 401 N.W.2d 184, 187 (Iowa 1987).

■ In determining whether evidence of other crimes, wrongs, or acts is admissible, the court must apply a two-step analysis. *State v. Plaster,* 424 N.W.2d 226, 229 (Iowa 1988). First, the court must decide whether the evidence is relevant. *Id.* If relevant, the court must then determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 231. "Unfair prejudice" involves "an undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one." *Id.* (quoting Fed. R.Evid. 403 advisory committee's note). Iowa Rule of Evidence 403, however, "does not provide protection against all evidence

that is prejudicial or detrimental to one's case; it only provides protection against evidence that is *unfairly* prejudicial." *Plaster,* 424 N.W.2d at 231.

■ The Moffitt check was introduced for the purpose of proving the identity of the person who forged the checks drawn on the Ross account. It was not offered, as Uthe suggests, to establish a plan or scheme requiring proof of similarity or connection to other crimes. *Cf. United States v. Krezdorn,* 639 F.2d 1327, 1331 (5th Cir.1981) (reversible error for court to admit thirty-two additional forgeries under plan or scheme exception to extraneous offense rule); *State v. Liggins,* 524 N.W.2d 181, 188 (Iowa 1994) (fact that defendant sold cocaine wholly independent and not relevant to charge of murder). Instead, as a known specimen of Uthe's writing, the Moffitt check itself tends to identify Uthe as the perpetrator of the Ross forgeries. The highly probative, and therefore relevant, nature of this evidence outweighs its prejudicial quality. The district court did not abuse its discretion in permitting the State to introduce it.

■ III. Uthe mounts a similar challenge to the check written for paint supplies in Boone and the related testimony by store employee Troy Tullis. Again this transaction implicates Uthe in another forgery because he was identified as having tendered a check bearing the signature of Clinton Ross. The evidence was relevant, however, on the question of Uthe's *opportunity* to commit the crime in question. The transaction establishes that Uthe had the Ross checkbook in his possession two days after the last forged check was written. Thus it tended to prove Uthe had the opportunity to commit the crimes charged within the relevant time frame.

The case is not unlike *State v. Knox,* 464 N.W.2d 445 (Iowa 1990). There the trial court ruled the defendant's prior possession of the alleged murder weapon—although plainly a prior bad act—admissible on the question of identity and opportunity to commit the crime. *Id.* at 449. On appeal we found no abuse of discretion, finding the "highly probative" nature of the evidence

outweighed any prejudice caused by its introduction. *Id.*

Likewise, we find no abuse of discretion here in the trial court's decision to admit the Boone check and the related testimony of Troy Tullis.

IV. Uthe was charged with three counts of "uttering" forged instruments. *See* Iowa Code § 715A.2(1)(c). The district court's proposed jury instructions, however, contained no definition of the term "uttered" used in the court's marshaling instruction. Counsel for Uthe complained about the oversight but offered no definition of his own. Uthe now urges on appeal that reversal is compelled because proof of uttering is an element of the crime that is not within a layperson's common knowledge.

■■■■ Assuming for the sake of argument that error has been preserved, we find no basis for reversal. The court instructed the jury as follows regarding the elements of the offense:

The State must prove all of the following elements of Forgery in Count I:

1. On or about the 18th day of November, 1993, the defendant uttered an Iowa Trust & Savings Bank check on the account of Clinton Ross.

2. Without Clinton Ross's authority, the defendant made the writing appear to be the act of Clinton Ross.

3. a. The defendant specifically intended to defraud K's Merchandise, or

b. The defendant knew the uttering of said check would facilitate a fraud.

The instruction for each count, although tailored to the individual facts, was otherwise identical.

It is well settled that a trial court need not instruct in a particular way so long as the subject of the applicable law is correctly covered when all the instructions are read together. *State v. Monk,* 514 N.W.2d 448, 450–51 (Iowa 1994); *State v. Morrison,* 368 N.W.2d 173, 175 (Iowa 1985); *State v. Lindsey,* 302 N.W.2d 98, 104 (Iowa 1981). The instruction that could easily have been given here, Iowa Uniform Criminal Instruction 1500.8, defines uttering as follows: "A person utters a writing when [he] [she] offers it to another and represents it is genuine." We believe the second paragraph of the marshaling instruction given in this case correctly paraphrases the term "uttering" so as to adequately instruct the jury on this element of the offense. We note, however, that the court's addition of the uniform instruction would have been preferable.

V. Uthe contends that the State's evidence, which was largely circumstantial, did no more than prove Clinton Ross did not write the checks to K's Merchandise. Specifically he claims the evidence is insufficient as a matter of law to prove that *he* uttered the checks drawn on the Ross account. The district court rejected this argument in its ruling on defendant's motion for judgment of acquittal and, we believe, rightly so.

■■■■ The question on a sufficiency-of-evidence challenge is whether substantial evidence supports the verdict. *State v. Barrett,* 445 N.W.2d 749, 753 (Iowa 1989). "Substantial evidence" is such evidence as would convince a rational trier of fact that the defendant is guilty of the crimes charged beyond a reasonable doubt. *State v. Blair,* 347 N.W.2d 416, 419 (Iowa 1984). In making this determination, we examine the evidence in the light most favorable to the State, giving the State all reasonable inferences and presumptions the evidence will bear. *State v. Constable,* 505 N.W.2d 473, 478 (Iowa 1993). We consider all of the evidence presented at trial, not just the evidence supporting the verdict. *Id.* Direct and circumstantial evidence are equally probative. *State v. Ross,* 512 N.W.2d 830, 832 (Iowa App.1993). Evidence, however, must do more than create suspicion or speculation, but must raise a fair inference of guilt. *Id.*

■■ The lynch pin of the State's case was officer Freeman's document-examination testimony. Although no witness could positively identify the defendant as the person who wrote the checks in question, the officer testified that the handwriting on the checks was the defendant's. Troy Tullis was able to identify Uthe as the person who tendered a check on the same account in Boone just two days after the alleged forgeries. Furthermore, after passing this check in Boone, the

defendant was apprehended with the Ross checkbook in his possession. Thus we find there was substantial evidence in the record to support the jury's verdict.

■ VI. In imposing sentence, the court gave reasons for its refusal to grant Uthe probation ("because it is unwarranted to protect the public from further criminal activity by the defendant and would unduly lessen the seriousness of the offense"). The court, however, failed to give even a terse explanation of why it imposed consecutive, as opposed to concurrent, sentences for the three offenses. Nothing else in the sentencing colloquy could be read as a clue to the court's reasoning. More is required to enable a reviewing court to properly perform its duty. *State v. Delaney*, 526 N.W.2d 170, 178 (Iowa App.1994); *State v. Taggart*, 525 N.W.2d 877, 882 (Iowa App.1994). Accordingly, the sentences must be vacated and the matter remanded for resentencing.

VII. Finally, Uthe cites specific instances of trial strategy or alleged inaction on the part of trial counsel that he believes prejudiced his defense and entitles him to a new trial. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (explaining standard of specificity to justify preservation of ineffectiveness claim). The record on appeal, however, is inadequate to address those challenges. We therefore preserve Uthe's ineffective-assistance-of-counsel claims for postconviction proceedings. This will enable development of the record and permit trial counsel the opportunity to respond to the claims. *Constable*, 505 N.W.2d at 479.

**DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND CASE REMANDED FOR RESENTENCING.**