# IN THE COURT OF APPEALS OF IOWA

No. 13-1683
Filed November 26, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES LAVERN PENISKA,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski (motion to suppress) and Timothy O'Grady (trial), Judges.

        James Peniska appeals his convictions of possession of methamphetamine exceeding five grams with intent to deliver, failure to affix a dug tax stamp, and possession of marijuana. **AFFIRMED.**

        Patrick A. Sondag of Sondag Law Office, Council Bluffs, for appellant.

        Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Matthew Wilber, County Attorney, and Shelly Sedlak, Assistant County Attorney, for appellee.

        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

James Peniska appeals, following a jury trial, claiming his convictions of possession of methamphetamine exceeding five grams with intent to deliver, failure to affix a dug tax stamp, and possession of marijuana are not supported by substantial evidence that he possessed the drugs. He contends the trial court erred in denying his motion to suppress evidence and in denying his requested jury instruction. He also argues the convictions are contrary to the weight of the evidence. We affirm because the officers had probable cause to search Peniska's vehicle, substantial evidence supports the jury's finding that Peniska constructively possessed the drugs found in the vehicle, the evidence did not heavily preponderate against the convictions, and the district court did not abuse its discretion in giving the standard jury instruction on possession.

**I. Motion to Suppress.**

We review de novo the ruling on the motion to suppress based on alleged constitutional violations. *State v. Carter*, 696 N.W.2d 31, 36 (Iowa 2005). "We evaluate the totality of the circumstances found in the record. In our review of the suppression ruling, we consider not only the evidence at the suppression hearing but also the evidence at trial." *Id.* (citations omitted). Because the trial court was in a better position to assess the credibility of the witnesses, we give weight to its fact findings but are not bound by them. *Id.*

A warrantless search is per se unreasonable unless it falls within a recognized exception. *Carter*, 696 N.W.2d at 37. A search based on probable cause and exigent circumstances is one such exception. *See id.* (noting

"[e]xigency exists when the vehicle is mobile and its contents may never be found again if a warrant must be obtained" (citation and alterations omitted).[1]

The *Carter* court observed,

> A police officer has probable cause to search a motor vehicle when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband. The facts and circumstances upon which a finding of probable cause is based include the sum total and the synthesis of what the police officer has heard, what the officer knows, and what the officer observes as a trained officer.

*Id.* (citations and alterations omitted).

Peniska challenges the trial court's finding of probable cause.

Here, around 11:30 p.m. on June 22, 2012, Council Bluffs Police Officer Nathan Powles had stopped at Eddy's, a gas station and convenience store. One of the store clerks, Elizabeth Kay, approached the officer, stating there were two women on the lot who would not leave the premises despite being asked several times. Kay stated the women had pumped gas into a white Jeep Cherokee and were asking other customers for money so that they could buy gas.

Officer Powles approached the white Jeep and encountered one of the women, Sunny Boege. At some point, Officer Powles called dispatch requesting a backup officer. Boege told the officer they had been waiting at the station until their friend got there to give them money for gas. She then indicated across the same "island" to a man (later determined to be Peniska) putting gas into a red Ford Mustang. The trunk of the Mustang was open. Officer Powles asked for Boege's identification. She did not have a valid driver's license. A background

---

[1] Peniska does not challenge the existence of exigent circumstances.

check found neither she nor the other woman had any warrants outstanding. While Officer Powles was checking the women's identification, both women had gone to stand near Peniska by the Mustang.

Officer Powles then approached Peniska, who was now seated in the front passenger side of the Mustang, with his feet outside the door. The door was open and Peniska's left hand was down by the seat. Officer Powles testified that Peniska appeared to be hiding something. He asked Peniska several times to show him his hands. Officer Powles stated it took "multiple" commands before Peniska complied. Peniska finally stood up, and Officer Powles had him step to the rear of the Mustang. Officer Powles asked Peniska for his identification. Peniska showed him a Nebraska identification card but he did not have a driver's license. When Officer Powles asked Peniska how he had arrived at the gas station, Peniska responded he had driven. Officer Powles ran a check of Peniska's identification. Sergeant Darren Budd had arrived in response the call for back up.

Officer Powles returned to the red Mustang, looked inside the open passenger door, and saw a bundle of small, one-inch by one-inch, blue plastic bags on the passenger floorboard. The bags were fastened with a band. Although possession of this type of plastic bag is not illegal, Officer Powles testified that in his experience, the small bags were a size "consistent with narcotics use or possession." Officer Powles reached into the Mustang and picked up the bags. Boege interrupted and said, "Hey, you can't do that." She was placed under arrest.

Officer Powles showed Sergeant Budd the plastic bags and told him to search the Mustang. Officer Powles testified:

> A. Then once Officer Budd arrived, I walked up and looked in the car on the passenger's side, saw a bundle of baggies wrapped in a rubber band.
> Q. When you say that you looked in the vehicle, was the passenger door still open? A. It was, yes.
> Q. And you stated that you located a bundle of baggies. Where in the vehicle would you say those were located? A. Passenger floorboard.
> Q. Was it in the area that Mr. Peniska had his hands earlier? A. Yes. His left hand would have been in the general area.
> Q. Did you see anybody else in the vehicle but Mr. Peniska? A. No.
> Q. Based on what you observed in the vehicle, what did you do next? A. Instructed Officer Budd to search the vehicle.
> Q. And why did you do that? A. Based on his movements and the finding of the baggies.
> Q. And based on your training and experience, what did you believe those baggies were related to? A. Consistent with narcotics use or possession.

Sergeant Budd also testified these types of bags "are typically associated with drugs." Inside the Mustang, Sergeant Budd found a container in the open console of the Mustang. The container had two bags with suspected narcotics: one that field tested positive for marijuana and one that field tested positive for methamphetamine. Inside the console, Officer Budd located a larger bag of suspected methamphetamine, which later testing confirmed.

Considering the totality of the circumstances—including Boege's claim that Peniska was there to assist her, Boege moving near Peniska's car while Officer Powles checked her identification, Peniska's sitting on the passenger side of his vehicle and his left-hand movements in front of the seat, Peniska's refusal to show his hand to the officer, Peniska's operation of the motor vehicle with only an identification card, Peniska's lack of cooperation in exiting the motor vehicle,

and the officer's plain view observation of a bundle of plastic bags generally associated with narcotics use—we find the State proved by a preponderance of the evidence that Officer Powles had probable cause to believe that contraband would be found in Peniska's vehicle. We therefore affirm the denial of his motion to suppress.

## II. Sufficiency and Weight of the Evidence.

Peniska contends there was not sufficient evidence to support the jury's finding that he possessed the methamphetamine and marijuana found in his vehicle to sustain the convictions.

> We review sufficiency-of-the-evidence claims for correction of errors at law. We uphold a verdict if substantial evidence supports it. "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." Substantial evidence must do more than raise suspicion or speculation. We consider all record evidence not just the evidence supporting guilt when we make sufficiency-of-the-evidence determinations. However, in making such determinations, we also view the "evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence."

*State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005) (citations omitted).

"We will uphold a verdict if substantial record evidence supports it." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) (citation and quotation marks omitted). "Evidence is considered substantial if, viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* "'Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence.'" *Id.* (citation omitted).

At trial, the jury was played the audio recording of Boege's statements when she was placed in Officer Powles' vehicle. On that recording, Boege repeatedly states that any drugs found in the red Mustang were hers and not Peniska's. She also claimed the two glass pipes found in a black drawstring bag in the white Jeep were hers. One of the pipes had white residue consistent with methamphetamine use. The other pipe was inside a sock wrapped with a band similar to the band around the empty plastic bags in the red Mustang.

Boege testified at Peniska's trial. She explained she and Peniska were involved in an intimate relationship, which they kept secret from the woman with whom Peniska lived. On June 22, 2012,

> I was trying to see him, because I hadn't seen him for a couple
> months, so we were going to meet at the gas station by the casino,
> he was going to bring me some money for food, and he was going
> to put gas in my friend's car for bringing me there.

Boege stated Peniska did not come at the arranged time, so she and the woman who had given her a ride, Shardee Sysel, had to wait for about an hour at the station. While they waited, they asked people for money for cigarettes. Boege testified that when Peniska arrived, she leaned into his car "to get a kiss" but got yelled at because she smelled like cigarettes and that Peniska gave her twenty dollars and "we proceeded to pump gas while he was sitting in the passenger side of the car." Boege testified she then moved the gas nozzle from her friend's Jeep to Peniska's car and "there was a Council Bluffs police officer." She testified she warned Peniska "we got some company."

She testified:

> They continued to search the Jeep and the Mustang. They found
> something. They put me in cuffs for the dope pipe, put me in the

back of the car. They had him [Peniska] in the back of the car. And Shardee [the driver of the Jeep] was still out talking to the cops, and they came up to the car, and once they came up to the car, I told them everything they found was mine.

Q. And you told the officer that came up to you that? A. Yes, ma'am.

Q. And when you said everything was yours, what did you mean? A. Anything they found. I didn't know what they found. I just said anything you found was mine.

Q. And why did you do that? A. Because Jamie [Peniska] has done a lot for me, and I was scared he was going to lose everything, including his business . . . . I loved him.

Q. Did he take care of you? A. Yes, ma'am.

. . . .

Q. When you told the police officers that everything in the vehicle was yours, do you know what they found? A. No, ma'am.

Q. Do you know where the items were located? A. No, ma'am.

. . . .

Q. And then what happened? A. They asked me if I knew what was there exactly or the amount that was there, and I didn't know what was there and how much was there. I just said there would be a lot.

Q. Did you know how much would be there? A. No. I just knew there would be a lot.

Boege testified, however, that nothing found in Peniska's car was hers. When asked why she changed her story and had told her attorney she had lied to the police, she stated it was because she did not think she should "take the fall for something that wasn't mine." She said she was testifying, "[b]ecause I ruined my life for nothing, for a false hope and false love." Boege stated she had not seen the drugs that were in evidence, and she did not know where they would have been found. She did, however, recognize the container police found on the console between the bucket seats of the Mustang—"It's what he used to keep his dope in. It was waterproof and it was easy to conceal. It's for ear buds. They are like ear mufflers for Darling [the company Peniska worked for]. They hand them out there."

While Peniska acknowledges that controlled substances were found in a vehicle of which "he had an apparent ownership interest" and that he was the last person in the vehicle before the drugs were found, he argues there is no evidence he knew of their presence or that he had the authority or right to control them—and both factors are necessary to establish constructive possession. *See State v. Reeves*, 209 N.W.2d 18, 23 (Iowa 1973).

As stated in *State v. Kern*, 831 N.W.2d 149, 161 (Iowa 2013), "constructive possession involves inferences." Peniska seeks to avoid the valid inference that arises from the exclusive possession of "the premises," i.e., the car, where drugs are found. *See Reeves*, 209 N.W.2d at 23 ("If the premises on which such substances are found are in the exclusive possession of the accused, knowledge of their presence on such premises coupled with his ability to maintain control over such substances may be inferred. Although no further proof of knowledge by the State is required in cases of exclusive possession by the accused the inference of knowledge is rebuttable and not conclusive."). In *State v. Dewitt*, 811 N.W.2d 460, 474-75 (Iowa 2012), our supreme court stated:

> Vehicles, however, alter the exclusive possession rule because of its modern role as a shared accommodation. We will not recognize an inference creating a rebuttable presumption of possession involving vehicles when it has been established that multiple individuals had equal access to the vehicle. When there is joint control, we require additional evidence to connect the defendant to the controlled substance sufficient to support a conviction for possession.

(Citations omitted.) We are to consider (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police officer's discovery of a controlled substance among or near the person's personal belongings;

(3) whether the person's fingerprints are on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance. *Kern*, 831 N.W.2d at 161.

> When the "premises" involve a motor vehicle, a court may consider these additional factors: (1) was the contraband in plain view, (2) was it with the accused's personal effects, (3) was it found on the same side of the car seat as the accused or immediately next to him, (4) was the accused the owner of the vehicle, and (5) was there suspicious activity by the accused.

*Carter*, 696 N.W.2d at 39.

Peniska argues the evidence showed Boege was alone in Peniska's car after it was parked in the station and just before he returned to the vehicle after pumping gas. Ms. Kierstead (formerly Kay) did testify that she saw "the passenger from the white Jeep in the gentleman's car" and she thought it "kind of odd" that the passenger from the Jeep got "in the passenger side" of "another random customer's car." Boege, however, testified she did not get in the Mustang because Peniska had yelled at her. She also testified the drugs in Peniska's car were Peniska's and that she recognized the container found on the console as being what Peniska "used to keep his dope in." Officer Powles testified that Peniska had his left hand down in front of the passenger seat. Baggies were found on the floor on that side of Peniska's vehicle in plain view.

It is the task of the jury to resolve questions of fact and assess the credibility of witnesses. *State v. Mills*, 458 N.W.2d 395, 397 (Iowa Ct. App. 1990). "A jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive." *Nitcher*, 720 N.W.2d at 556. Based on the evidence presented, the

jury could reasonably infer that Peniska knew of and had the right to control the drugs found on and in the console next to the driver's seat of his vehicle. We conclude substantial evidence supports the convictions.

Peniska argues that even if the evidence is sufficient to sustain the convictions, he should have been granted a new trial because the weight of the credible evidence heavily preponderated against the jury verdicts.

The weight-of-the-evidence standard differs from the sufficiency-of-the-evidence standard in that the district court does not view the evidence from a standpoint most favorable to the government. *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004). Rather, the court weighs the evidence and considers the credibility of the witnesses. *Id.* While it has the discretion to grant a new trial where a verdict rendered by the jury is contrary to law or evidence, the court should do so only "carefully or sparingly." *Id.* In our review, we limit ourselves to the question of whether the trial court abused its discretion; we do not consider the underlying question of whether the verdict is against the weight of the evidence. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). Here, the district court did not abuse its discretion in denying Peniska's motion for new trial.

**III. Jury Instruction.**

Finally, Peniska contends the jury was not adequately instructed on the law of constructive possession. We review such claims for errors of law. *State v. Becker*, 818 N.W.2d 135, 140 (Iowa 2012). A trial court's refusal to give a requested jury instruction is reviewed for an abuse of discretion. *Id.* "'An abuse of discretion occurs when the court's decision is based on a ground or reason

that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree.'" *Id.* (citation omitted).

"'It is well settled that a trial court need not instruct in a particular way so long as the subject of the applicable law is correctly covered when all the instructions are read together.'" *State v. Canal*, 773 N.W.2d 528, 532 (Iowa 2009) (quoting *State v. Uthe*, 542 N.W.2d 810, 815 (Iowa 1996)).

The district court gave the uniform jury instruction on possession, which provided:

> The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may have sole or joint possession.
> A person who has direct physical control over a thing on his person is in actual possession of it.
> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it. A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing.
> If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.
> Whenever the word "possession" has been used in these instructions, it includes actual as well as constructive possession and sole as well as joint possession.

*See* Iowa State Bar Ass'n Criminal Jury Instruction No. 200.47.

While Peniska asked for a more particularized jury instruction,[2] we conclude the substance of the additional statements was adequately covered in

---

[2] The instruction requested was identical to the one given but included the italicized language below:

> The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may have sole or joint possession.

the instruction given.  We find no abuse of discretion in refusing to give the requested instruction.  We therefore affirm.

**AFFIRMED.**

---

A person who has direct physical control over a thing on his person is in actual possession of it.

A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it.  A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing. *Proof of opportunity of access to a place where contraband is found will not, without more, support a finding of unlawful possession.  State v. Reeves, 209 N.W.2d 18 (Iowa 1973).  The authority or right to maintain control includes something more than the 'raw physical ability' to exercise control over the controlled substance.  The defendant must have some proprietary interest or an immediate right to control or reduce the controlled substance to the defendant's possession.  State v. Bash, 670 N.W.2d 135 (Iowa 2003).*

*Knowledge alone is not enough to establish constructive possession; the evidence must also support an inference that he had the ability to maintain control of the controlled substance.  State v. Reeves, 209 N.W.2d 18, 22 (Iowa 1973).*

If one person alone has actual or constructive possession of a thing, possession is sole.  If two or more persons share actual or constructive possession of a thing, possession is joint.

Whenever the word "possession" has been used in these instructions, it includes actual as well as constructive possession and sole as well as joint possession.