**IN THE COURT OF APPEALS OF IOWA**

No. 14-1675
Filed July 9, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LUCY ANN SCHNIEDERS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar (plea) and David F. Staudt (sentencing), Judges.


        Lucy Ann Schnieders appeals following judgment and sentences imposed upon her convictions for four counts of child endangerment causing bodily injury. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Tyler J. Buller and Jean C. Pettinger, Assistant Attorneys General, Louis S. Sloven, Student Legal Intern, Thomas J. Ferguson, County Attorney, and Linda Fangman and Brook Jacobsen, Assistant County Attorneys, for appellee.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

Lucy Ann Schnieders appeals following judgment and sentences imposed upon her convictions for four counts of child endangerment causing bodily injury, in violation of Iowa Code section 726.6 (2013). She argues the district court did not state adequate reasons for imposing consecutive sentences. She also contends the court imposed an illegal sentence when it entered a protective order prohibiting her from all contact with her children, the victims of her offenses.

**I. Background Facts and Proceedings.**

On November 7, 2013, a trial information was filed charging Schnieders with four counts of child endangerment (two counts asserted Schnieders permitted abuse resulting in serious injury to the two victims, class "C" felonies, and two counts asserted Schnieders withheld food resulting in bodily injury to the two victims, class "D" felonies) concerning her twin daughters who were born two months prematurely in June 2013. Upon hospitalization for failure to thrive, x-rays revealed each child had multiple broken bones.

On January 27, 2014, Schnieders filed an application to modify the conditions of a no-contact order prohibiting her from having any contact with the alleged victims. After a hearing, the court overruled that application.[1]

On July 21, 2014, Schnieders entered an *Alford* plea[2] to four counts of child endangerment causing bodily injury.[3] The district court specified that

---

[1] We are not provided a record of the February 3, 2014 hearing.
[2] Under the authority of *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), a defendant may consent to the imposition of a prison sentence without admitting participation in the crime. Under such a plea, the defendant acknowledges the evidence strongly negates a

Counts I and II of the trial information as amended alleged that between August and September 25, 2013, Schnieders was the parent of M.O. and K.O. and knowingly permitted the continuing physical abuse of M.O. and K.O., resulting in bodily injury; and Counts III and IV of the trial information alleged that between August and September 25, 2013, Schnieders willfully deprived the children of food when she was able to make reasonable provisions, and that the deprivation substantially harmed the children's physical, mental, or emotional health and caused bodily injury. Schnieders's attorney stated that she was "offering this plea without an agreement as to what sentencing will be," and stated Schnieders understood that each charge carried "a potential maximum term of imprisonment of five years" and that "depending on what the Court does, those could be set to run concurrent for a sentence of five years, but if they are stacked, one on top of each other, that would be a 20-year sentence."

At the sentencing hearing on October 2, 2014, the State recommended Schnieders be sentenced on two of the four charges to two, five-year prison terms, to run consecutively:

> We are recommending that the court, at a minimum, send the defendant to prison for one five-year term. But in light of the fact that there are two separate victims in this case who both received horrible treatment at the hands of their mother, we would recommend a ten-year prison term and have the two cases run consecutive to each other.

claim of innocence and enters a guilty plea to avoid a harsher sentence. *State v. Knight*, 701 N.W.2d 83, 85 (Iowa 2005). The court has discretion to accept an *Alford* plea where "'the record before the judge contains strong evidence of actual guilt.'" *State v. Klawonn*, 609 N.W.2d 515, 521 (Iowa 2000) (quoting *Alford*, 400 U.S. at 37).

[3] The two amended charges stemmed from Schnieders's permitting the physical abuse of the infants; each child's x-rays indicated multiple fractures to both legs, which were in different stages of healing; one child also had fractured ribs. The two remaining charges alleged Schnieders's neglect of her three-month-old twin daughters. Each of the four charges is a class "D" felony.

The State referred the sentencing court to the minutes of testimony, which contained the statements from the victims' treating physicians attesting to the facts showing that "the babies were abused and abused horribly."

The presentence investigation (PSI) report noted Schnieders was no longer involved with the father of the twins. The PSI reporter "believed the defendant has been in an emotionally abusive relationship with him and has not wanted to reveal what happened that caused fractures to their twin infants." The PSI report also indicated Schnieders has two older children who were in the custody of the department of human services (DHS) and "[a]ccording to the defendant's social worker at [DHS] the defendant has done everything they have asked in order to regain the custody and maintain parental rights of these two children." Regarding the twins, the PSI provided:

> They were removed from the defendant's care on 10/25/2013 due to the abuse and conditions being considered unsafe. There is a founded case of child abuse and neglect and there is a no contact order. The twin children are in foster care placement and are not expected to be returned to the defendant. Prior to the birth of the twins the defendant had sought and intended to give the twins up for adoption. She and [the children's father] reconciled at the time of their birth and they kept the babies. The Department of Human Services is recommending termination of the defendant's parental rights and there is no plan to return these children to the defendant. The foster parents intend to adopt the twin girls who are still delayed but continuing to progress.

The PSI report also noted Schnieders had no prior criminal or child abuse record, she had mental health and learning disability problems, "has cooperated fully" with DHS requirements, was working, and had "distanced herself from the unhealthy relationship with the children's father." The PSI recommended a five-year prison term for each count be imposed and suspended.

The defense attorney argued for a suspended sentence, stating in part:

> This is a case of a mother who did fail to protect these two children, these two very fragile infants, and during the course of time this occurred she was involved in an abusive, very unhealthy relationship, again, with the father of these three kids [the twins and one of the mother's older two children]. She has done everything to better herself as an individual and also as a mother. She knows she will lose those two daughters and she has prepared herself emotionally for that; however, she does look forward to the opportunity of having her [two older children] returned to her care.
>
> As a result of this, she's lost her career, her occupation, it looks like she'll lose her two daughters. She has lost a lot, Your Honor, and we're asking the court consider a deferred judgment in this case since failure to protect these kids is out of character for her. If not, we are asking the court to suspend sentence in this matter, suspend the fines, and place Miss Schnieders on a period of supervised probation which is consistent with recommendations of the presentence investigation.

The sentencing court, after a lengthy discussion of the defendant's culpability for the malnutrition and permitting physical abuse of the two infant victims, sentenced the defendant to "five years in prison on each of the [four] counts," with "Counts II, III, and IV concurrent to each other and Count I consecutive to that, totaling ten years." The court also ruled that "the no contact order between [the defendant] and these children will be extended five years."

Schnieders appeals, contending the court did not state adequate reasons for imposing consecutive sentences and that the no-contact order constitutes an illegal sentence and denied her of due process.

**II. Scope and Standards of Review.**

When a defendant challenges her sentence on appeal, "[d]epending upon the nature of the challenge, the standard of review is for the correction of errors at law or for an abuse of discretion." *State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006). Challenges to the legality of a sentence are reviewed for correction of

errors at law. *State v. Freeman*, 705 N.W.2d 286, 287 (Iowa 2005). Challenges to the sentence as unreasonable are reviewed for an abuse of discretion. *State v. Evans*, 671 N.W.2d 720, 727 (Iowa 2003). To the extent Schnieders presents constitutional issues, our review is de novo. *State v. Hall*, 740 N.W.2d 200, 202 (Iowa Ct. App. 2007).

**III. Discussion.**

*A. Consecutive sentences.* "Sentencing decisions are cloaked with a strong presumption in their favor." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000). According to Iowa Rule of Criminal Procedure 2.23(3)(d): "The court shall state on the record its reason for selecting the particular sentence." "A statement may be sufficient, even if terse and succinct, so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion." *State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989); *accord State v. Hennings*, 791 N.W.2d 828, 838 (Iowa 2010) (rejecting claim that reasons were not adequately provided and stating that "[t]he court spoke at length about the information it considered in making a sentencing determination and specifically, what factors influenced its ultimate decision"). The purpose of requiring reasons for imposing consecutive sentences is to allow the reviewing court a record from which we can determine if the district court abused its discretion. *State v. Uthe*, 542 N.W.2d 810, 816 (Iowa 1996). We must vacate a sentencing decision where the sentencing court "failed to give even a terse explanation of why it imposed consecutive, as opposed to concurrent, sentences." *See id.* ("Nothing else in the sentencing colloquy could be read as a

clue to the court's reasoning. More is required to enable a reviewing court to properly perform its duty.").

Here, we are able to determine the sentencing court's reasons for ordering consecutive sentences and the factors it considered important. *See Hennings*, 791 N.W.2d at 838 ("The court spoke at length about the information it considered in making a sentencing determination and specifically, what factors influenced its ultimate decision."). The court's discussion of its sentencing decision shows that two specific factors contributed to the court imposing two consecutive five-year terms of imprisonment to encompass all four convictions: (1) there were two child victims; and (2) the defendant's neglect and abuse persisted for months, ceasing only when other parties intervened. *See State v. Barnes*, 791 N.W.2d 817, 827–28 (Iowa 2010) ("The court's reasons for ordering consecutive sentences were clearly expressed in its overall explanation for the sentence it imposed.").

In evaluating Schnieders's culpability, the sentencing court found it significant that she allowed both infants to suffer recurring physical abuse over many weeks. The court observed the children's treating pediatricians would have testified that the x-rays showed "[t]hese two children had multiple fractures" each. Additionally, the sentencing court found the fact that both children had suffered the same type of forceful physical abuse made it "hard to believe [the defendant was] unaware of the mistreatment of these children." The sentencing court specified it was running Count I (knowingly permitting the physical abuse of M.O.) consecutively with Count II (knowingly permitting the physical abuse of K.O.), and Count II was to run concurrently with Counts III and IV. The

sentencing court repeatedly referred to two victims and the State's recommendation was based on this same exacerbating factor. *See Johnson*, 445 N.W.2d at 343 (dismissing Iowa Rule Criminal Procedure 2.23(3)(d) challenge to the consecutive sentences: "It is apparent to us that the district court ordered the defendant to serve his sentences consecutively as part of an overall sentencing plan, the particular reasons for which appear in the sentencing colloquy" where the State recommended that the sentencing court should "give good consideration to running the sentences consecutively because two different people were in fact victimized" and because each of the defendant's two convictions "deal[t] with a separate individual, separate victim"). Because we are able to discern the sentencing court's reasons for ordering consecutive sentences and the factors it considered important, we find no abuse of discretion.

*B. No-contact order.* Schnieders appeals the portion of her sentence that prohibits any contact between her and the victims as violating her fundamental right to parent her children. She acknowledges that section 664A.2 provides the district court with authority to issue a criminal no-contact order in any case involving a public offense against the victim.[4] She also acknowledges the State has a compelling government interest in protecting children from physical harm. However, she argues that in light of her constitutionally-protected right to parent,

---

[4] A no-contact order is defined in Iowa Code section 664A.1(1):

"No-contact order" means a court order issued in a criminal proceeding requiring the defendant to have no contact with the alleged victim, persons residing with the alleged victim, or members of the alleged victim's immediate family, and to refrain from harassing the alleged victim, persons residing with the alleged victim, or members of the alleged victim's family.

Section 664A.2 provides, "This chapter [chapter 664A] applies to no-contact orders issued for violations or alleged violations of sections 708.2A, 708.7, 708.11, 709.2, 709.3, and 709.4, and any other public offense for which there is a victim."

*see Quillon v. Walcott*, 434 U.S. 246, 255 (1978), the no-contact order is overly restrictive.

The criminal no-contact order entered was required by Iowa Code section 664A.3 when Schnieders was arrested for an applicable public offense.[5] Section 664A.5 states that if a defendant is convicted or pleads guilty to an applicable offense, the temporary no-contact order issued by the magistrate "shall either [be] terminate[d] or modif[ied]" by the district court and the court "may continue the no-contact order already in effect for a period of five years from the date of the judgment." Schnieders argues the order forbidding *all* contact with her children was not narrowly tailored to the goals of protecting the children and that the record "is sufficient to justify the modification of the no-contact order to permit written communication and supervised visits with K.O. and M.O." She also summarily contends the record does not establish the district court exercised the discretion it possessed under the statute.

The State responds that a parent retains no liberty interest in involvement in a child's life following termination of parental rights. *See In re K.A.*, 516 N.W.2d 35, 38 (Iowa Ct. App. 1994). However, Schnieders's parental rights had

---

[5] That section states,

> When a person is . . . arrested for any public offense referred to in section 664A.2, subsection 1, and the person is brought before a magistrate for initial appearance, the magistrate *shall enter a no-contact* order if the magistrate finds both of the following:
>
> a. Probable cause exists to believe that any public offense referred to in section 664A.2, subsection 1, or a violation of a no-contact order, protective order, or consent agreement has occurred.
>
> b. The presence of or contact with the defendant poses a threat to the safety of the alleged victim, persons residing with the alleged victim, or members of the alleged victim's family.

Iowa Code § 664A.3(1) (emphasis added).

not been terminated at the time of sentencing and, thus, this argument offers no justification for the court's order at the time of sentencing.

The State argues that in any event the extension of the no-contact order survives strict scrutiny because it is narrowly tailored to the State's compelling interest in protecting these children from future harm. We agree. The district court's no-contact order prohibits Schnieders from having contact with those she victimized. *See State v. Corbett*, 242 P.3d 52, 64 (Wash. Ct. App. 2010) (upholding no-contact order between parent and his children as they were within the class of persons victimized). While the State has no reason to "inject itself into the private realm of the family" so long as a parent adequately cares for her children, *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000), we conclude Schnieders's convictions for child endangerment of her own children rebuts the presumption of fitness. *Cf. In re Marriage of Howard*, 661 N.W.2d 183, 190 (Iowa 2003) (noting presumption of fitness). The State's interest in protecting these children is compelling. *Id.* ("[A] *compelling* state interest arises when substantial harm or potential harm is visited upon children."). Each of the two infants was a victim of physical abuse and malnutrition as a result of the mother's conduct (either directly or indirectly). And the State has a compelling interest in also preventing future harm to the victims of the crime. *See In re D.J.R.*, 454 N.W.2d 838, 844-45 (Iowa 1990). Moreover, the scope of the no-contact order falls within the statutory definition. *See* Iowa Code § 664A.1(1) (stating a no-contact order means an order "requiring the defendant to have no contact with the alleged victim"). We therefore affirm.

**AFFIRMED.**