STATE of Iowa, Appellee,

v.

John Albert KNOX, Jr., Appellant.

No. 89–294.

Supreme Court of Iowa.

Dec. 19, 1990.

Linda Del Gallo, Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden and James Kivi, Asst. Attys. Gen.,

and Diann Wilder–Tomlinson, County Atty., for appellee.

Kasey W. Kincaid, K.J. Walker, and Michael A. Giudicessi, Des Moines, for amicus curiae.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER, and ANDREASEN, JJ.

LARSON, Justice.

John Albert Knox, Jr., was convicted of first-degree murder, Iowa Code §§ 707.2(1), 707.2(2) (1989), and first-degree sexual abuse, Iowa Code §§ 709.1(1), 709.2 (1989). He appealed, and we affirm.

### I. *Right to Speedy Trial.*

■ Knox was charged by county attorney's information on June 19, 1987. Four days before trial, the State moved to dismiss the information without prejudice, and the motion was sustained. On February 4, 1988, Knox was indicted by a grand jury, and he was tried on that indictment.

Knox argues that he was denied his right to speedy trial under Iowa Rule of Criminal Procedure 27(2), which requires trial within ninety days after indictment. He claims that the State's last-minute motion to dismiss was a bad-faith attempt to avoid the speedy trial deadline. *See State v. Gansz,* 403 N.W.2d 778, 780 (Iowa 1987) (dismissal "without adequate cause and [which] impacted unfavorably upon a defendant's speedy trial rights" warrants dismissal on speedy-trial grounds).

Iowa Rule of Criminal Procedure 27(1) grants the trial court discretion to order dismissal of any pending criminal prosecution in the furtherance of justice. A dismissal under rule 27(1) does not bar another prosecution if the offense charged is a felony or aggravated misdemeanor. Our review of the trial court's rule 27(1) dismissal is for abuse of discretion. *State v. Brumage,* 435 N.W.2d 337, 341 (Iowa 1989). We will not find an abuse of discretion unless the defendant shows that the trial court's discretion was exercised on grounds clearly untenable or clearly unreasonable. *Id.*

The State's motion to dismiss was the result of newly discovered evidence. Just prior to trial, the State was informed that there was an unidentified blood print on the sheet removed from the victim's bed. Analysis of the blood print made just two days before the State moved to dismiss showed it not to be that of the defendant. The State's motion stated that the newly discovered evidence was of an exculpatory nature, and the State was uncertain whether it was "morally, ethically and legally fair" to proceed against the defendant. It sought dismissal to allow it to conduct further investigation. The trial judge granted the State's motion, finding it was in the interest of justice.

We have held that facilitating the gathering of evidence is a proper reason for a rule 27(1) dismissal, *see Brumage,* 435 N.W.2d at 340; *State v. Fisher,* 351 N.W.2d 798, 801 (Iowa 1984); *State v. Johnson,* 217 N.W.2d 609, 612–13 (Iowa 1974), and Knox has failed to demonstrate any bad faith on the part of the State in seeking the dismissal to allow further investigation. Knox, in fact, did not resist the motion, apparently agreeing that there were legitimate grounds for it.

Defendant claims that the State's recharging him without new evidence demonstrates the dismissal was obtained in bad faith. Defendant's contention is without merit. The fact that a subsequent investigation fails to discover new evidence does not necessarily establish that the prior dismissal was without merit. Furthermore, contrary to Knox's contention, new evidence was uncovered after the dismissal. The State submitted the stained sheet to fingerprint experts, one of whom testified that the bloodstain could have been a composite handprint and footprint. He further explained that a positive identification of the printmaker could not be made, even if the maker's identity had been known, because the fabric material of the sheet made it impossible. In the subsequent investigation, the State also found two Negroid hairs. One of these hairs was consistent with defendant's pubic hair and the

other with his head hair. This additional evidence was also introduced at trial.

Knox has failed to demonstrate that the dismissal in the furtherance of justice lacked adequate cause, that it was obtained in bad faith, or that the court otherwise abused its discretion. We believe the furtherance of justice, for both the State and the defendant, was served.

## II. *Closure of Posttrial Hearing.*

Knox contends that the court erred in failing to close a portion of the hearing on his motion for new trial in which he attempted to prove that the jury foreman was a member of the anti-Semitic and racist terrorist organization, Posse Comitatus. Knox moved to close the hearing during the testimony of two lay witnesses who allegedly had expressed concerns about retaliation by the jury foreman or the Posse Comitatus. The State resisted the motion, as did several members of the local news media. The district court denied closure, ruling that it would be an impermissible prior restraint. The court also found that any damage had already been done because the jury foreman knew the identity of the two witnesses.

Because this issue involves the potential violation of basic constitutional safeguards, our review is de novo, and we make our own evaluation of the record from the totality of the circumstances. *Des Moines Register & Tribune v. District Court,* 426 N.W.2d 142, 143 (Iowa 1988).

■ The first amendment implicitly guarantees the press and general public a right of access to criminal trials.[1] *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973, 991–92 (1980) (plurality opinion). This right of access, however, is not unqualified. In *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 14, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1, 13–14 (1986), the

Supreme Court stated that, before a criminal proceeding can be closed, the Court must make specific findings "demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's free trial rights." In other words, closure must be necessitated by a compelling interest and must be narrowly tailored to serve that interest. *See Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248, 257 (1982).

■ Knox's argument that the hearing should have been closed because of the two witnesses who allegedly expressed apprehension about testifying is based on his fear that this impacted unfavorably on his right to a fair hearing. He failed, however, to introduce sufficient evidence from which it could be concluded there was a substantial probability that his right to a fair trial would be prejudiced. One of the two "frightened" witnesses did testify at the hearing and expressed no concerns about retaliation. Although the second witness was not present for the hearing, he was never actually subpoenaed and no evidence was presented to establish any specific reason for his failure to appear. Even assuming the witnesses were apprehensive, their concerns that they could be placed in danger does not necessarily require closure. *Cf. Des Moines Register & Tribune Co. v. Osmundson,* 248 N.W.2d 493, 500 (Iowa 1976) (confidentiality of juror list denied).

The trial court had no basis in the record for concluding any danger existed to the witness or that Knox's right to a fair trial was impaired by the open proceeding. Knox also failed to show, as required by the cases cited above, that no reasonable alternatives to closure could adequately protect his fair trial rights. We conclude

---

1. Both parties assume that the first amendment right to access attaches to the posttrial proceedings in question. We therefore do not apply the "experience and logic" test enunciated by the Supreme Court to determine if a right to access attaches to a particular proceeding. *See Press–*

*Enterprise Co. v. Superior Court,* 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 9–10 (1986); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 605–06, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248, 256 (1982); *see also Des Moines Register & Tribune,* 426 N.W.2d at 145–47.

that the trial court was correct in refusing to close the proceeding.

### III. Striking the Sole Black Juror.

Defendant's third contention is that the trial court erred in overruling defendant's objection to the State's use of a peremptory challenge against the sole black juror on the panel. Knox claims that the strike violated his sixth amendment rights.

Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (a due process case), a defendant must first establish a prima facie case of purposeful discrimination in selection of the jury panel. He may establish a prima facie case by showing that the prosecution's use of its peremptory challenges and any other relevant circumstances raise an inference that the government excluded prospective jurors on the basis of their race. *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88. In determining whether a defendant has established the requisite showing of purposeful discrimination, the court should consider all relevant circumstances including, but not limited to, a pattern of strikes against black jurors, as well as the prosecutor's questions and statements during voir dire. *Id.* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Once a defendant makes a prima facie showing of purposeful discrimination, the state has the burden of articulating a clear and reasonably specific and neutral explanation for the peremptory challenge. Because the trial judge's finding whether purposeful discrimination exists will largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference. *Id.* at 98 n.21, 106 S.Ct. at 1724 n.21, 90 L.Ed.2d at 89 n.21.

■ In the present case, Knox argues that the necessary inference was raised sufficiently by the State's exclusion of the sole black juror. We find defendant's argument without merit. Merely showing that the State used a peremptory challenge to exclude this juror falls short of raising an inference of purposeful discrimination. *See United States v. Vaccaro*, 816 F.2d 443, 457 (9th Cir.), *cert. denied*, 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220; 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987) (state's use of peremptory challenges to exclude the only two black jurors did not establish a prima facie case of purposeful discrimination); *see also United States v. Sangineto–Miranda*, 859 F.2d 1501, 1521 (6th Cir.1988) (fact prosecutor used all its peremptory challenges against blacks, standing alone, does not raise the necessary inference of purposeful discrimination). If the underrepresentation of a class is obvious based on empirical evidence, this alone may be a sufficient for prima facie case, *cf. State v. Watkins*, 463 N.W.2d 411, 414–15 (Iowa 1990) (sixth amendment challenge to composition of jury panel), however, that is not the case here.

■ Even assuming that a prima facie case had been established, the State established a neutral, reasonable basis for challenging the juror. At trial, the prosecutor stated that the prospective juror was struck because she knew defense counsel and had actually worked with him on a board. The juror also knew two of defense counsel's partners. This is the kind of race-neutral reason which *Batson* left available to litigants in choosing their juries. In this case, the State's challenge of a nonblack juror who indicated he knew a partner of defense counsel supports the conclusion that the State's decision was neutral.

We find defendant's sixth amendment claim to be without merit.

### IV. Prior Bad Acts.

Knox contends the district court erred in admitting evidence of two prior bad acts, because they were not relevant. He also argues that, even if the testimony were relevant, its probative value was outweighed by the unfair prejudice generated by its admission.

The State responds that the evidence was relevant, was not unduly prejudicial, and that the district court properly exercised its discretion in admitting it.

Iowa Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character

of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have recognized that rule 404(b)'s list of purposes for which evidence of other crimes may be admitted is not exclusive, *State v. Plaster*, 424 N.W.2d 226, 228 (Iowa 1988). This test regarding evidence of other crimes, wrongs, or acts was enunciated in *Plaster*:

> The court must first decide whether the evidence is relevant. If the court finds that it is, the court must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. A positive finding as to the second step overcomes the evidence's prima facie admissibility.

*Id.* at 229 (citations omitted). This analysis requires that the trial court exercise its discretion, and we will reverse a trial court only when we can find a clear abuse of it. *Id.*

A. *Defendant's prior possession of knife.* Knox challenges the admission of evidence that two or three months prior to this crime, he placed a knife down the back of his pants and left home, telling his girlfriend to say he was home if anyone asked. This knife was alleged by the State to be the murder weapon. Blood residue was found on it which was consistent with that of the victim, and medical examiners testified that the shape of the knife was consistent with the victim's wounds.

The State argues that the evidence was admissible under the exceptions to rule 404(b). The fact that Knox had possession of the knife alleged to be the murder weapon was relevant in showing identity and opportunity. *See United States v. Covelli*, 738 F.2d 847, 855 (7th Cir.), *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984) ("[E]vidence of prior possession of a weapon can be used to prove opportunity and identification even where it cannot be directly identified as the weapon used in the crime."); *Government of the V.I. v.*

*Joseph*, 685 F.2d 857, 860–61 (3d Cir.1982) (evidence of prior possession of gun relevant to show opportunity, even though not gun identified as gun used in robbery); *United States v. Waldron*, 568 F.2d 185, 187 (10th Cir.1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978) (evidence of possession of weapons used in the robbery highly probative of issue of identity); *State v. Cuevas*, 282 N.W.2d 74, 79 (Iowa 1979) (evidence of prior possession of murder weapon relevant in determining the identity of the person committing the crime).

■ Evidence of defendant's prior possession of the alleged murder weapon was highly probative, and we find the trial court did not abuse its discretion in admitting it. We reject Knox's argument that its probative value was outweighed by its prejudice.

■ B. *Remarks to police regarding "Dr. Ruth."* The day after the murder, a police officer canvassed the victim's neighborhood. At that time, the officer interviewed Knox about what he was doing the night before. Knox said that he had watched various television shows, including "Dr. Ruth." Knox stated that he did not really like the show but that he did watch it the night before. He then stated, "I don't like any old white woman telling me how to ... or make a woman feel satisfied."

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Iowa R.Evid. 401, and evidence of conduct exhibiting a bad state of feeling on the part of the defendant toward a murder victim is admissible. *State v. Cole*, 63 Iowa 695, 697, 17 N.W. 183, 184 (1883). Although the "Dr. Ruth" statement does not indicate a negative feeling toward the victim as an individual, it could demonstrate negative feelings toward her race and sex. This is relevant in determining a defendant's intent, motive, malice and identity. *See United States v. Franklin*, 704 F.2d 1183, 1187–88 (10th Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983).

We conclude that, while the evidence was of limited probative value, it did have some.

The question of undue prejudice is more difficult. "The task of weighing the danger of prejudice against the probative value always involves a balancing process, a matter concerning which the trial court must exercise sound judgment and discretion." *State v. Walsh*, 318 N.W.2d 184, 187 (Iowa 1982). Because this evidence tended to show the defendant's state of mind just prior to the incident, providing a possible motive and malice, we do not believe the trial court abused its discretion in admitting it, despite its potential for prejudice.

### V. *Preservation of Juror Misconduct Claim.*

Finally, Knox asks us to preserve for postconviction relief his claim that the jury foreman failed to disclose on voir dire that he was a member of Posse Comitatus. He argues that the issue should be preserved because it falls within the "newly discovered evidence" portion of the postconviction statute, which provides relief to applicants who can show that "[t]here exists evidence of material facts, not previously present and heard, that requires vacation of the conviction or sentence in the interest of justice...." Iowa Code § 663A.2(4) (1989).

Section 663A.2(4) requires the applicant to show that "the evidence was discovered after judgment. He may not rely on evidence discovered after trial but before judgment unless he establishes an excuse for not having raised the issue in a motion for new trial...." *Jones v. Scurr*, 316 N.W.2d 905, 907 (Iowa 1982). Knox has failed to make this showing. There is no question that Knox discovered the evidence in question prior to judgment. In fact, he raised the issue in his motion for new trial prior to judgment.

Knox requests that this issue nevertheless be preserved because, while the testimony of a key witness was known to him at the time of his new trial motion, he was powerless to present it. While we have doubts about the extent of this absent witness's unavailability, we will assume for these purposes that he could not be produced at the hearing. In *Jones,* we considered the question of whether evidence that was unavailable, but known, at the time of a hearing is to be considered as newly discovered evidence. We held that it was not. *Id.* at 910.

Postconviction relief is not a means for relitigating claims that were or should have been presented at trial. *Washington v. Scurr,* 304 N.W.2d 231, 234–35 (Iowa 1981); Iowa Code § 663A.8 (1989). The defendant should have and did present his claim in his motion for new trial. The fact that he failed to present sufficient evidence to warrant a new trial does not preserve his claim for postconviction relief. Accordingly, we decline to preserve this issue for postconviction proceedings.

AFFIRMED.