# IN THE COURT OF APPEALS OF IOWA

No. 20-0993
Filed September 22, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ARMANDO ADAME III,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Gregg R. Rosenbladt,

Judge.

Appellant appeals his conviction for first-degree murder and felony

possession of a firearm.  **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant

Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

Considered by Mullins, P.J., May, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**MAY, Judge.**

Armando Adame III, appeals his convictions for first-degree murder and possessing a firearm as a felon. We affirm.

Viewing the record in the light most favorable to the verdict, this case is about a methamphetamine deal gone wrong. In October 2017, Adame and two of his friends went on a long, overnight drive from Cedar Falls to Grundy Center to Marshalltown to Tama and finally to Charles City. Along the way, they picked up another friend who would take them to a house in Charles City. There they hoped to pick up some methamphetamine to sell for a profit. Hours and hundreds of miles later, the group finally arrived in Charles City—but their connection reneged on the promise to deliver the methamphetamine. Tired and angry, Adame and his two friends started driving back to Cedar Falls. Along the way, an argument broke out between Adame and Michael Johns, one of the friends. When the friend who was driving pulled over on a rural Floyd County gravel road to urinate, Adame and Johns kept arguing and got out of the car. Adame retrieved a sawed-off shotgun from the trunk of the car, shot Johns point blank, and left Johns's body along that lonely Floyd County gravel road. Later, after the driver was arrested on an unrelated charge, he told police the story of what happened. Johns's body was eventually found. Adame was charged with first-degree murder and possession of a firearm as a felon. After a jury trial, Adame was convicted on both counts.

On appeal, Adame argues that his trial was tainted by admission of testimony from Ashley Clement. Clement had dated Michael Johns before his death. She moved in with him in August or September 2017. In October 2017, Clement testified she came home to find Adame and Johns arguing about some

money Johns owed Adame. Adame was holding a gun. When Clement walked in the room, Adame pointed the gun at her and said, "She can pay for you." In her testimony, Clement identified the gun as a sawed-off shotgun. But Clement did not claim Adame fired the gun. Rather, Johns intervened to defuse the situation. According to Clement, Johns "put his arm out and, like, hit the barrel of the gun and said, 'She has nothing to do with this.' And told me to go." Clement then ran outside.

Adame argues this testimony by Clement should have been excluded as improper character evidence, violating Iowa Rule of Evidence 5.404. Adame also argues the evidence was substantially more prejudicial than probative and, therefore, should be excluded under rule 5.403. "[W]e generally review evidentiary rulings for abuse of discretion." *State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008). "An abuse of discretion occurs when the trial court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017) (quotation marks and citations omitted).

Evidence of uncharged crimes or other bad acts is generally not admissible unless the evidence serves a non-character purpose, such as proving motive, intent, or absence of mistake. *See* Iowa R. Evid. 5.404(b)(2); *State v. Wilson*, 878 N.W.2d 203, 211 (Iowa 2016). We ask three questions to determine whether admission constituted an abuse of discretion:

- First, was the evidence relevant and material to a legitimate, non-character issue in the case?

- Second, was there clear proof the accused actually committed the bad act or crime?

- And finally, was the probative value of the evidence substantially outweighed by a risk of unfair prejudice?

*See State v. Richards*, 879 N.W.2d 140, 145 (Iowa 2016).

We see no abuse of discretion here. To begin with, we reject Adame's argument that Clement's testimony could only suggest a propensity for illegal activity or general bad character. For one thing, Clement's description of the argument between Adame and Johns suggests a "bad state of feeling on the part of the defendant" toward the victim, which is plainly relevant to Adame's intent and motive to harm Johns. *See State v. Knox*, 464 N.W.2d 445, 449 (Iowa 1990). Also, Clement's identification of the weapon Adame pointed at her—a sawed off shotgun—matched the alleged murder weapon. *See id.* So we readily conclude Clement's testimony is relevant to important non-character issues in the case.

We next consider whether there is clear proof that Adame actually did what Clement reported. We believe this threshold has been met. We do not require corroboration or proof beyond a reasonable doubt to pass the clearness threshold. *State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004). Instead, there simply must be enough proof to prevent jury speculation or drawing inferences based solely on suspicion. *Id.* Here, Clement testified under oath and was subject to cross-examination. This alone passes the "clear proof" hurdle. *See State v. Caples*, 857 N.W.2d 641, 647 (Iowa Ct. App. 2014) ("Testimony of a credible witness can satisfy th[e clear proof] requirement."); *see also Richards*, 879 N.W.2d at 152 (holding

testimony constituted clear proof of the other acts under the circumstances presented).

Finally, we turn to the classic exercise of balancing the probative force of Clement's testimony against the risk of unfair prejudice.[1] We consider the need for the challenged evidence in light of the issues presented and any other available evidence, the strength or weakness of the evidence on the issue, and the degree to which the factfinder may be influenced to decide the case on an improper basis. *State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004). This balancing is "not an exact science," and we give a "great deal of leeway to the trial judge who must make this judgment call." *State v. Putnam*, 848 N.W.2d 1, 10 (Iowa 2014) (quoting *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006)).

We do not think the district court exceeded its broad "leeway" here. After hearing Clement testify through an offer of proof, the district court made these observations:

> In this type of motion, we're talking about Rules [5.]403 and [5.]404. And that involves a balancing. The court needs to balance the prejudicial effect of the evidence versus any probative value. And some of this evidence may be admitted for certain purposes as the State has argued such as motive, intent, lack of mistake, those stated in the rule.
> The things that I was curious to hear about were the time of the incident. The witness indicated at first it was in September of '17, but then she said more likely in October of '17. So that would put us in the same timeframe. The—also of relevance is the witness would testify that she saw the defendant in possession of a gun—not a real detailed description—but she indicated that it appeared to be a shotgun with a cut barrel. So that is a relevant observation.
> The court was curious about the involvement of Michael Johns in the incident. It appears from the offer of proof that Mr. Johns

---

[1] This third prong of the other-acts admission test requires us to consider an identical standard to Adame's rule 5.403 objection. Our analysis in this section applies to both objections.

was actually there and that when the witness came home, she overheard Mr. Johns and the defendant having a discussion or argument about money upstairs when she got home and the fact that Mr. Johns may have owed the defendant money.

The incident itself, it seems Mr. Johns was present there, not just Ms. Clement or the defendant, but that Mr. Johns she'll testify was present and did observe it and actually took his hand and moved the gun away from the witness. In the case that we're hearing about at trial, there has been a discussion of money and drugs and money being owed for drugs and trying to get money and also the defendant's frustration that a lot of effort was being put into an endeavor that didn't pan out or amount to any gain for anybody. And so I think a lot of the issues here are the same.

For those reasons—and I seriously have considered this—under the rules looking at the probative value of the evidence, I find that the evidence does have a lot of probative value for the reasons I've set down, the timing, the involvement of Mr. Johns, circumstances, identification of gun by the witness. There certainly is prejudicial effect, but I think the probative value of the evidence does outweigh this and the evidence is admissible under the exceptions in [5.]404(b)(2). So the court will allow the testimony.

We find no abuse of discretion in this thoughtful, carefully-considered ruling, which largely speaks for itself. *See State v. Tyler*, 873 N.W.2d 741, 755 (Iowa 2016). We add only a few comments. First, the need for Clement's testimony was not insubstantial—after all, only Clement could explain this telling interaction between Adame and the victim that occurred just weeks before the victim's death. Her testimony was probative as to both (1) the dangerous state of the men's relationship in early fall 2017, and (2) Adame's possession of a sawed-off shotgun, the very sort of weapon used to kill Johns in fall 2017.

On the other hand, as the district court understood, there was some risk of unfair prejudice, like the desire to punish Adame for pointing a gun at Clement. But when the charged crime is substantially more serious than the "other bad acts," the risk of unfair prejudice is reduced. *See State v. Rodriquez*, 636 N.W.2d 234, 243 (Iowa 2001). That is the case here. Clement did not claim Adame had

physically harmed anyone. She did not even claim he fired the gun. Indeed, according to Clement, Adame actually allowed Johns to push the barrel of the gun away. So while the incident Clement described was certainly concerning, it was far less "sensational or disturbing" than the charged crime of murder. *See State v. Larsen*, 512 N.W.2d 803, 808 (Iowa Ct. App. 1993). And we see little risk that Clement's testimony would "rouse" the jury to "overmastering hostility." *See State v. Plaster*, 424 N.W.2d 226, 232 (Iowa 1988).

All things considered, we believe the district court acted well within its discretion. We affirm.

**AFFIRMED.**