# IN THE COURT OF APPEALS OF IOWA

No. 20-1551
Filed February 16, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**PATRICK H. BOOKER, JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Wittig, Judge.

Patrick Booker appeals his conviction and sentence for third-degree sex abuse. **CONVICTIONS AFFIRMED, AMENDMENT TO SENTENCING ORDER VACATED.**

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**MAY, Judge.**

Patrick Booker appeals his conviction for third-degree sexual abuse as well as an amendment to his sentencing order. We affirm Booker's conviction but vacate the amendment.

**I. Background Facts & Proceedings**

An adult woman, C.H., hosted a "tattoo party" at her home. People were "in and out" getting tattoos done at C.H.'s house. C.H. had invited Booker to the party so he could perform piercings, too. And C.H. had made a plan to have group sex with Booker and tattoo artist Andy Cheeks when the party ended.

The party wrapped up around midnight. C.H. was in her bedroom with Booker and Cheeks. Larry Earley, who is Booker's brother, was also present. And Early was "being vocal at" C.H. about "also joining." Booker told C.H. "to do sexual things with Larry." C.H. became uncomfortable. She left the room and went to her kitchen. Booker followed her into the kitchen—and slammed her head against a wall. Then Booker made C.H. stand by an open window "for hours" before eventually leaving the kitchen.

C.H. returned to her bedroom and laid down. Booker entered the room and tore off C.H.'s clothing. Booker inserted his penis into C.H.'s anus and vagina. Meanwhile, she was crying and telling him to stop. Cheeks and Earley came in C.H.'s bedroom and asked what was happening. Booker told them to mind their own business. After about ten to fifteen minutes, Booker got up and eventually fell asleep.

A few days later, C.H. called the police. The State charged Booker with third-degree sexual abuse, in violation of Iowa Code section 709.4(1) (2018). The

case was tried in two phases. At the end of phase one, the jury found Booker guilty of third-degree sexual assault. At the end of phase two, the jury determined Booker had been convicted of sexual assault in a previous case. Because of this finding, Booker is subject to the sentencing enhancement under Iowa Code section 903B.1.

The district court denied Booker's motion for new trial and sentenced him to prison. Booker filed a notice of appeal. But then, after the notice was filed, the State moved nunc pro tunc to correct Booker's sentencing order, which omitted the special sentence under section 903B.1. The parties disputed whether the district court retained jurisdiction to correct the sentence. After a hearing, the district court granted the State's motion and amended Booker's sentence. Booker filed a second notice of appeal. The supreme court consolidated the appeals and transferred them to our court.

## II. Discussion

### A. Substantial Evidence

We begin by considering Booker's claims that insufficient evidence supports his conviction for sexual assault as well as his sentencing enhancement. We review sufficiency-of-the-evidence claims for corrections of errors at law. *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011). Viewing the verdict in the light most favorable to the State, our task is to determine whether substantial record evidence supports the finding of guilt. *Id.* Evidence is "substantial" if it would convince a rational factfinder the defendant is guilty beyond a reasonable doubt. *State v. Harris*, 891 N.W.2d 182, 186 (Iowa 2017) (citation omitted).

To convict Booker of third-degree sexual assault, the jury was required to find that (1) Booker and C.H. engaged in a sex act and (2) the act was by force *or* against C.H.'s will. *See* Iowa Code § 709.14(1). We believe substantial evidence supports these findings. To begin with, C.H. testified that Booker vaginally and anally raped her. Her testimony, alone, is enough to fulfill the "substantial evidence" requirement. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("We find that the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt."). While Booker points to inconsistencies in C.H.'s testimony—as well as conflicts between her testimony and other evidence—her "credibility was for the jury to decide." *See State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999). Moreover, the State's case was not built on C.H.'s testimony alone. Other evidence corroborated her account, including photos of her ripped shirt, her injured lip, and the blood-stained wall where Booker allegedly slammed her head. Plus DNA evidence linked Booker's genetic profile to C.H.'s vaginal swabs. The chances of a false match was less than one in 2.3 quintillion. Taken together, we believe the evidence was more than sufficient to support Booker's conviction. *See* Iowa Code § 709.4(1)(a); *State v. Enderle*, 745 N.W.2d 438, 443 (Iowa 2007).

Booker also challenges the sufficiency of evidence establishing him as a subsequent offender for sentencing purposes.[1] But the State argues, and we agree, that error was not preserved on this issue because Booker failed to move for a judgment of acquittal before the issue was submitted to the jury. *See State*

---

[1] The State presented a certified copy of a court record from Cook County, Illinois plus the testimony of Andy Cheeks, Booker's co-defendant from the Illinois case.

*v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004) ("To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal."). Because error was not preserved, we do not address the issue.

### B. Weight of the Evidence

Booker also challenges the denial of his motion for new trial. Our review of this claim is for an abuse of discretion. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998) ("Trial courts have wide discretion in deciding motions for new trial.").

When deciding a motion for new trial, the court may "weigh the evidence and consider the credibility of witnesses." *Id.* at 658. "If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted." *Id.* at 658–59. But this discretion to grant a new trial must be exercised "carefully," "sparingly," and "with caution." *Id.* at 659 (citation omitted). A new trial should not be granted "where the evidence . . . is nearly balanced or is such that different minds could fairly arrive at different conclusions." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). Rather, the power to grant a new trial "should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Ellis*, 578 N.W.2d at 659 (citation omitted). Failure to follow these restrictions "would lessen the role of the jury as the principal trier of the facts and would enable the trial court to disregard at will the jury's verdict." *Id.*

Booker points to numerous weaknesses in the State's testimonial and physical evidence. Booker focuses heavily on C.H.'s confusion as to whether she actually injured her lip or her head, or where the blood stains on the wall came from. He also notes that both of the alleged witnesses to the assault denied seeing Booker have sex with C.H. Booker also questions why the ripped shirt worn by C.H. that night is torn in a straight line, rather than a jagged pattern. Finally, Booker points to evidence of C.H.'s reputation for dishonesty.

Despite all of these points, we do not find the district court was obligated to grant a new trial. As already explained, ample evidence showed (1) Booker had vaginal and anal intercourse with C.H. on the night in question and (2) C.H. did not consent. The district court did not abuse its discretion by finding this evidence credible. Nor did the court abuse its discretion by concluding a new trial was unwarranted.

**C. Batson Challenge**

Booker also argues the district court erred in denying Booker's *Batson*[2] challenge. We disagree.

Booker's challenge concerned the State's use of a preemptory strike on potential juror number thirty-eight. Booker reports that potential juror number thirty-eight is Black, and Booker "is also" Black. Booker claims he successfully made a prima facie showing of racial discrimination and the State's proffered explanations were merely pretextual.

---

[2] *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.").

Iowa courts employ a three-step analysis for *Batson* objections:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*State v. Mootz*, 808 N.W.2d 207, 215 (Iowa 2012) (quoting *Purkett v. Elem*, 514 U.S. 765, 767 (1995)). We review the district court's denial of a *Batson* challenge de novo, although we show "a great deal of deference to the district court's evaluation of credibility when determining the true motives of the attorney when making strikes." *State v. Veal*, 930 N.W.2d 319, 327 (Iowa 2019) (quoting *Mootz*, 808 N.W.2d at 214).

We think the district court got it right. First, Booker has not shown "a prima facie case of racial discrimination" by the prosecution. For instance, Booker does not cite—and we are unable to find—evidence of a pattern of discrimination against jurors of a particular race.[3] Booker cites *Batson* for the proposition that "the defendant is entitled to rely on the fact, as to which there can be no dispute, that preemptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" 476 U.S. at 96 (citation omitted). But that passage from *Batson* is necessarily qualified by the following sentence, which requires a defendant also "show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude

---

[3] The record is not clear if potential juror number thirty-eight was the only Black potential juror. But striking the sole Black juror on a panel is not *itself* sufficient to generate an inference of purposeful racial discrimination. *See State v. Knox*, 464 N.W.2d 445, 448 (Iowa 1990).

[potential jurors] on account of their race." *Id.* In this case, we can find no such facts or circumstances.

Even if Booker had shown a prima facie case, we think the State's race-neutral explanations foreclose further analysis. *See Mootz*, 808 N.W.2d at 215 ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." (quoting *Hernandez v. New York*, 500 U.S. 352, 359 (1991))). Our review of these explanations is highly deferential. *Id.* at 218 ("The Supreme Court does not require the reason for the strike be 'persuasive, or even plausible.'" (citation omitted)). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360.

Here, the State provided multiple race-neutral explanations for using a peremptory challenge on potential juror number thirty-eight. For one thing, potential juror number thirty-eight worked third shift, and the State was concerned with his ability to remain awake and alert during trial if he continued to go to work. Plus there were reasons to worry potential juror number thirty-eight could be defense-oriented. For instance, he believed his cousin had been falsely accused of sexual assault. Although the cousin was sentenced to fifty years in prison, potential juror number thirty-eight suggested "both parties" were equally to blame.

We find no reason to conclude these race-neutral explanations were pretextual. Rather, we conclude they were legitimate grounds for the State to

exercise its preemptory challenge. So we do not believe the district court erred in denying Booker's *Batson* challenge.

### D. Cause Challenge to Potential Juror Number Twenty-Four

Booker next challenges the dismissal for cause of potential juror number twenty-four. A district court is vested with broad discretion in ruling on challenges for cause to potential jurors. *State v. Tillman*, 514 N.W.2d 105, 107 (Iowa 1994). We review for abuse of that discretion. *State v. Miller*, No. 11-1064, 2012 WL 3027096, at *2 (Iowa Ct. App. Jul. 25, 2012).

Here, though, we do not reach the question of whether potential juror number twenty-four was wrongly excluded. "[E]ven if the court erred in striking the juror, this alone would not justify reversal." *State v. Duhrkopf*, No. 19-2038, 2020 WL 6484043, at *5 (Iowa Ct. App. Nov. 4, 2020). "Prejudice from the erroneous exclusion of a juror will not be presumed." *Summy v. City of Des Moines*, 708 N.W.2d 333, 339 (Iowa 2006), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). "Rather, *the defendant must show* the court's actions resulted in the seating of a partial juror." *State v. Morrow*, No. 14-2126, 2016 WL 3003355, at *3 (Iowa Ct. App. May 25, 2016) (emphasis added). Booker has not made this showing. So we see no grounds to reverse.

### E. Exhibit Thirty-Five Objections

During the second phase of Booker's trial, the jury was tasked with determining whether Booker had been previously convicted of sexual abuse. Booker claims the district court erred by admitting Exhibit thirty-five, a certified statement of conviction and disposition for a "Patrick Booker" in Cook County, Illinois. It purports to show a conviction of sexual abuse in 2013. Booker argues

the failure to properly authenticate the document rendered it irrelevant, unfairly prejudicial, and, therefore, inadmissible. Our review is for abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013).

We find no abuse here. Exhibit thirty-five is a self-authenticating certified copy of a public record. Iowa R. Evid. 5.902(4). It shows that a "Patrick Booker" was convicted of a sexual assault crime in Illinois in 2013. So, as Booker concedes, the record was at least "nominally probative" as to the issue before the jury, namely, whether Booker had been previously convicted of a sexual abuse crime.[4] It passed the (very low) threshold for relevance under Iowa Rules of Evidence 5.401 and 5.402. *See State v. Buelow*, 951 N.W.2d 879, 885 (Iowa 2020) ("Evidence is relevant if it can 'throw any light upon the matter contested.'" (citation omitted)).

Of course, it is true that the record *alone* may not have been enough to convict Booker.[5] As Booker emphasizes, the record only identified "Patrick Booker"—it did not state Booker's full name, "Patrick H. Booker, Jr." But this shortcoming went to the weight of the evidence, not its relevance.[6] *See State v. Akok*, No. 17-0655, 2018 WL 4362065, at *1 (Iowa Ct. App. Sept. 12, 2018) ("Once the trial court determines [the evidence is legally relevant], any speculation to the

---

[4] The Illinois court records are captioned "People of the State of Illinois vs. Patrick Booker." The appellant in this action is named Patrick H. Booker, Jr.

[5] Nor was it the only evidence the State presented. It was buttressed by the testimony of Booker's co-defendant in the Illinois case, Andy Cheeks. Cheeks testified he and Booker pled guilty to two counts of aggravated criminal sexual abuse, consistent with the contents of Exhibit thirty-five.

[6] In closing argument, Booker's attorney argued the exhibit should be given reduced weight because of the commonality of Booker's name. This was the appropriate means for handling the exhibit's shortcomings.

contrary affects the weight of the evidence rather than its admissibility." (citing *State v. Biddle*, 652 N.W.2d 191, 196–97 (Iowa 2002)). And while Booker claims this deficiency "was highly prejudicial," we see nothing *unfairly prejudicial* about the exhibit. *See Buelow*, 951 N.W.2d at 889 ("[A]ll powerful evidence is prejudicial to one side. The key is whether the danger of unfair prejudice substantially outweighs the evidence's probative value . . . ." (alteration in original) (citation omitted)). Certainly, we see no basis to conclude the record's probative value was "substantially outweighed" by unfair prejudice as required for exclusion under Iowa Rule of Evidence 5.403.

In short, we see no valid grounds to exclude Exhibit thirty-five. So we cannot say its admission was an abuse of discretion.

### F. Nunc Pro Tunc Jurisdiction

Following trial and sentencing, Booker filed his notice of appeal on November 24, 2020. On January 8, 2021, the State moved nunc pro tunc to correct Booker's sentence.[7] Booker resisted. After a hearing, the district court granted the motion and amended Booker's sentence to include the special sentencing provisions of Iowa Code section 903B.1. Booker timely filed a second notice of appeal.[8]

On appeal, the State and Booker agree the district court did not have jurisdiction to amend Booker's sentence after he filed his first notice of appeal. But

---

[7] Because Booker was convicted of sexual abuse in the third degree as a second or subsequent offender, a special sentence applied to his conviction by operation of Iowa Code section 903B.1. But neither party raised the special sentencing provision at the sentencing hearing, and the district court did not include it in its sentencing order.

[8] The supreme court consolidated Booker's appeals.

the parties differ on how to move forward. Booker asks us to remand to the district court with instructions to vacate the amended sentence. The State makes no specific request but advises that it will likely move to correct Booker's sentence after procedendo issues.

We agree that the district court did not have jurisdiction to amend Booker's sentence after he filed his first notice of appeal. *See State v. Mallett*, 677 N.W.2d 775, 776 (Iowa 2004) ("Generally, an appeal divests a district court of jurisdiction."). So we vacate the sentencing amendment. But once this appeal is concluded, the State may ask the district court to make any appropriate corrections to Booker's sentence.

## III. Conclusion

We affirm Booker's convictions. But we vacate the amendment to the sentencing order. Following procedendo, the State may ask the district court to make any appropriate corrections to Booker's sentence.

**CONVICTIONS AFFIRMED, AMENDMENT TO SENTENCING ORDER VACATED.**