# IN THE COURT OF APPEALS OF IOWA

No. 24-0901
Filed October 15, 2025

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**KEYUN JERAMIAH McGOWAN,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Linn County, Chad Kepros, Judge.


     Keyun McGowan appeals his convictions after a jury found him guilty on six criminal counts, including first-degree murder.  **AFFIRMED.**


     Webb L. Wassmer of Wassmer Law Office, PLC, Marion, for appellant.

     Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


     Considered without oral argument by Greer, P.J., Buller, J., and Doyle, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**DOYLE, Senior Judge.**

Keyun McGowan appeals his convictions after a jury found him guilty on six criminal counts, including first-degree murder. He contends the district court abused its discretion by admitting photos of him holding a handgun. He also challenges the sufficiency and weight of the evidence showing his guilt.

## I. Background Facts and Proceedings.

A jury found McGowan guilty on six counts stemming from an attempted robbery that led to the shooting and death of seventeen-year-old Cristian Upah. Upah used Snapchat, a social-media and instant-messaging service, to publicize that he was selling vape cartridges containing THC. Upah told his girlfriend, Mia, that someone he knew from school by the name of "Jackson" messaged about buying four or five cartridges. This person gave Upah an address of a Cedar Rapids residence, and Upah agreed to meet him there.

Mia drove Upah to the address in her vehicle. When they arrived, someone got in the backseat. Mia described the person as African American, not much taller than her,[1] and "very skinny." The person was wearing black jeans and a black hooded sweatshirt. She was unable to see his face because he had the hood on, and it was dark outside.

The person in the backseat insisted that they drive to a second location to complete the sale, but they returned to the residence after seeing a police vehicle in the area. While stopped in the driveway, the passenger pulled out a handgun, aimed it at Upah, and demanded that he hand over the cartridges. Mia saw that

---

[1] Mia testified that she is "five-five and a half."

the gun had a laser sight on it because there was a small red dot on Upah's arm, where the gun was aimed at. When Upah denied having any cartridges with him, the person pointed the gun at Mia and threatened to shoot her in the head.

Upah jumped into the backseat, and the two men began fighting each other. When one of the vehicle's back doors opened, they fell to the ground and continued fighting. Mia got out of the car and joined in the fight. Upah yelled to Mia to "Grab the gun." But she could not find it "and it was really dark out."

A single shot was fired from the gun, and the other person ran inside the residence. The bullet struck Upah in the chest. Despite Mia's attempts to stop the bleeding, Upah died from his injuries.

A cellphone belonging to McGowan was found on the driveway near where Upah and the other man fell out of the car. On the phone, police found twelve photos of McGowan holding a handgun equipped with a flashlight and a red laser sight. The phone was also connected to the Snapchat account that arranged the purchase from Upah.

McGowan's friend, Alyvia, lived at the address where the shooting occurred. Alyvia testified that she and McGowan were hanging out at the home when McGowan told her he was going outside because "his cousin was coming." She saw a vehicle's headlights in the driveway, and McGowan left. About five minutes later, she heard "a girl screaming" before McGowan ran inside. Alyvia went outside and saw Upah and Mia but no one else. Alyvia went back inside and saw McGowan, who was out of breath and looked scared. When Alyvia asked what happened, he did not answer. McGowan slept on her bedroom floor that night. The next day, he told Alyvia that he had lost his phone.

McGowan's friend, Dwayne, testified McGowan was holding a Glock 43X 9mm pistol in the photos found on his phone.[2] McGowan purchased the gun about one or two months before the shooting. Dwayne described the gun as small and charcoal or dark gray with a flashlight and red laser sight mounted on it. McGowan confessed to Dwayne that he tried to rob Upah and shot him.

The State charged McGowan with first-degree murder, two counts of first-degree robbery, going armed with intent, assault while displaying a dangerous weapon, and use of a dangerous weapon in the commission of a crime. After trial, a jury found McGowan guilty as charged. McGowan appeals.

**II. Admissibility of Evidence.**

McGowan first challenges the admissibility of the photos on his phone depicting him holding a gun. We review evidentiary rulings for abuse of discretion. *See State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014). The court abuses its discretion by exercising that discretion on grounds or for reasons that are clearly untenable or to an extent clearly unreasonable. *See id.* A ground or reason is untenable if not supported by substantial evidence or if based on an error of law. *See id.* But even if the court abused its discretion in admitting evidence, McGowan must show he was prejudiced by that error before we reverse. *See id.*

McGowan contends that the photo evidence was inadmissible as evidence of prior bad acts under Iowa Rule of Evidence 5.404(b). It states, "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the

---

[2] The gun uses the same type of bullet that killed Upah, but there is no ballistic testing identifying it as the weapon that fired the bullet.

character." Iowa R. Evid. 5.404(b)(1). McGowan claims that the evidence was used to show he acted in conformity with his propensity to possess a gun.

But evidence of prior bad acts is admissible in some circumstances. *See* Iowa R. Evid. 5.404(b)(2). It may be admitted for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2). At trial, McGowan tried to cast doubt on his identity as the shooter. As a result, the district court found the purpose of the evidence was to show McGowan was the shooter rather than to prove he acted in conformity with his character.

McGowan claims the evidence does not show the firearm in the photos was used in the shooting. And though the evidence shows it could have fired the bullet that killed Upah, McGowan argues it is not unique enough to show it was used in the shooting because Glocks are one of the more popular firearms and 9mm is one of the most popular calibers.

The gun used to kill Upah was never recovered. The State's firearms expert testified that without access to the gun, there is no way to confirm that the bullet or casing found at the scene was fired from McGowan's gun. But "evidence of prior possession of a weapon can be used to prove opportunity and identification even where it cannot be directly identified as the weapon used in the crime." *United States v. Covelli*, 738 F.2d 847, 855 (7th Cir.), *cert. denied*, 469 U.S. 867 (1984), *cited with approval in State v. Knox*, 464 N.W.2d 445, 449 (Iowa 1990); *see also State v. Brown*, No. 20-1098, 2022 WL 468960, at *5 (Iowa Ct. App. Feb. 16, 2022) (finding messages sent by a homicide defendant stating he was carrying the type of gun used to commit the crime was "highly probative on the issue[] of identity");

*Knox*, 464 N.W.2d at 449 ("The fact that Knox had possession of the knife alleged to be the murder weapon was relevant in showing identity . . . ."). The court correctly determined that McGowan's argument went to the weight of the evidence, not its admissibility. *See State v. Campbell*, No. 18-0764, 2020 WL 1049755, at *4 (Iowa Ct. App. Mar. 4, 2000) ("We acknowledge that the description of the guns carried by the three men was vague—two black guns and one silver gun—and that no one specifically linked the guns in the challenged photo to the crimes at issue. But, as the district court recognized, that goes to the weight the jury should assign to the evidence, not whether it is admissible.").

McGowan contends that even if the evidence has probative value, that probative value is outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403. But the court found that the evidence was not unfairly prejudicial to McGowan.

> The danger of unfair prejudice is reduced by the fact that [McGowan]'s face is shown in the photographs depicting him holding the weapon, that [Dwayne] has personal knowledge of the firearm as belonging to [McGowan], that the photographs at issue were located on [McGowan]'s own phone, and that the phone was recovered at the scene of the crime. As such, there is strong support that [McGowan], as opposed to some other person, was holding the firearm depicted in the photographs. The danger of unfair prejudice is further reduced by the limits of the State's use of the evidence in proving its case (i.e. the firearm not being recovered, no ballistics, other firearms that could meet the description provided by [Mia]), which can be effectively pointed out by the defense through cross-examination, argument, and otherwise. Moreover, as argued by the State, there is no illegality to [McGowan] possessing and photographing himself with a firearm, nor any allegation that [McGowan] was committing a crime in the photographs, thereby reducing the risk of unfair prejudice.

We agree. Finding no abuse of discretion, we affirm the admission of the photographic evidence.

**III. Sufficiency and Weight of the Evidence.**

McGowan also challenges the sufficiency and weight of the evidence showing his guilt. We review challenges to the sufficiency of the evidence for correction of legal errors, upholding the verdict if substantial evidence supports it. *See State v. Heard*, 636 N.W.2d 227, 229 (Iowa 2001). Substantial evidence is evidence that could convince a rational fact finder that a person is guilty beyond reasonable doubt. *See id*. When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may be reasonably drawn from it. *See id.*

We review rulings on motions for new trial asserting a verdict contradicts the weight of the evidence for abuse of discretion. *See State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). District courts grant new trials only in exceptional circumstances. *See id.* at 705. An abuse of discretion occurs when a court exercises its discretion on clearly untenable grounds or to a clearly unreasonable extent. *See State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018). A verdict is not contrary to the weight of the evidence unless "a greater amount of credible evidence supports one side of an issue or cause than the other." *Id*. at 570 (citation omitted). But it is not our job to reweigh the evidence on appeal; it is only to determine whether the district court abused its discretion by finding the evidence does not preponderate heavily against the verdict. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

McGowan's claims about the sufficiency and weight of the evidence focus on the shooter's identity. For instance, McGowan notes that Mia did not get a good look at the shooter's face and could not identify him. Although she described the

shooter's height, weight, and build, McGowan argues evidence of his height, weight, or build was not presented at trial, and that no one asked Mia if McGowan is similar in appearance. But the jury observed McGowan, both in person during the trial and in the photographs on McGowan's phone, which were taken a month before the shooting. Based on its observations, the jury could draw its own conclusions as to whether McGowan matched Mia's description. *See State v. Stevens*, 719 N.W.2d 547, 552 (Iowa 2006) ("[J]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved." (cleaned up)). Substantial evidence supports a finding that Mia's description matched McGowan's height, weight, and build at the time of the shooting. And based on her description, it is not contrary to the evidence to find that McGowan was the shooter.

McGowan also emphasizes the differences in Mia's description of the gun and the gun depicted in the photo exhibits, as well as her overall lack of knowledge about guns. For example, Mia described the gun as "very little" with a red dot and did not mention any flashlight attached to it. In contrast, he claims that the gun in the photos from his phone show the gun is "small" but not "very little," and that it was illuminated by an attached flashlight and did not show a red dot. While a red laser is not visible in all the photos from McGowan's phone, it is illuminated in

Exhibit 12d.[3]  In addition, two close-up photos of McGowan's gun—Exhibits 12j and 12k—depict the attachment, which includes both a flashlight and a sight located below the gun barrel.[4]  And although Mia did not describe the gun used in the shooting as having a flashlight attachment as depicted in the photos from McGowan's phone, that discrepancy is not dispositive.[5]

McGowan also notes conflicting evidence about the shooter leaving the scene on a bicycle and the fact that no one saw him with a gun that night. Resolving these conflicts and determining credibility are questions for the jury to decide.  *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (cleaned up).  Looking at the record as a whole, including incriminating statements McGowan made to a friend, we agree that the verdicts are supported by substantial evidence and are not contrary to the weight of the evidence.  We therefore affirm.

**AFFIRMED.**

---

[3] McGowan's friend, Dwayne, testified about the image:

> Q. Dwayne, I notice something glowing on the bottom of that Glock; what is that?  A. Laser sight.
> Q. So that reddish-orangish glow there on the bottom of the handgun, that would be the red dot laser you've been telling us about?  A. Correct.
> Q. Did you take this photograph so that the laser would be seen in the photograph?  A. Yes.

[4] As described by Dwayne at trial, the gun had "a flashlight right underneath the slide, and then right underneath the flashlight is a red dot laser."  Although the laser sight was not illuminated in every photo, Dwayne clarified that a laser would come from the bottom hole shown in the close-up photos when it was on.

[5] The record does not indicate whether the flashlight had to be used in conjunction with the laser sight.  Dwayne testified that he was "pretty sure" the flashlight and laser sight were two separate pieces.